**Richmond.**

BURRUSS v. NATIONAL LIFE ASSOCIATION OF HARTFORD, CONN.

JANUARY 12, 1899.

Absent, Riely and Cardweil, JJ.

1. INSURANCE—*Application a Part of Policy—Sec. 3252 of Code Applies to Application.*—Sec. 3252 of the Code, which provides that no failure to perform any condition or restrictive provision of an insurance policy shall be a valid defence to an action thereon unless such condition or restrictive provision be printed in type of a specified size, or written with pen and ink in or on the policy, applies alike to the application and the policy issued thereon, where the application is expressly made a part of the contract of insurance.

2. INSURANCE—*False Statements of Applicant—Knowledge of Agent.*—No recovery can be had on a life insurance policy procured upon wilfully false statements of the assured of facts material to the risk, although the insurance was solicited by the agent of the insurance company, and the beneficiary informed the agent that he did not believe insured could obtain insurance, that he had heard that insured was in bad health, and had been rejected by other companies.

3. INSURANCE—*Misrepresentations of Assured—Ignorance of Beneficiary.*—If insurance be effected upon the life of a debtor for the benefit of his creditor, and misrepresentations of material facts inducing the contract be made by the debtor, the policy will be vitiated although the beneficiary was ignorant of such misrepresentations.

Error to a judgment of the Law and Chancery Court of the City of Norfolk rendered March 15, 1897, in a proceeding by motion for a judgment on a life insurance policy wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

This was a proceeding by motion on an insurance policy issued in favor of the plaintiff in error on the life of John F. Dezendorf, for the sum of $15,000. The policy was issued April 11, 1894. During the month of May following the company requested the return of the policy for cancellation, on the ground that it had been obtained by false representations. The policy was not returned. Dezendorf died June 22, 1894, and this action was instituted to recover the amount of the policy. The defence was that the policy was obtained by fraud and that there had been a breach of the warranties contained in the application which was a part of the policy. After all the evidence had been introduced, the defendant demurred to the evidence, in which demurrer the plaintiff joinéd. The trial court rendered judgment for the defendant on the demurrer. The following is a statement of the evidence as taken from the opinion of the trial judge on the demurrer to the evidence :

" The policy is on the life of Dezendorf in favor of the plaintiff, and is issued on Dezendorf as a first-class risk and at the lowest premium.

" In the application, Dezendorf, among other statements, makes the following :

" 1. That all propositions or applications made by him for insurance on his life had been accepted for the full amount asked for, etc.

" 2. That no physicians had ever given an unfavorable opinion upon his life as to insurance, or otherwise.

" 3. That he had no usual medical attendant.

" 4. That he had consulted no physician regarding his health within five years..

" This application was made on the 7th day of April, 1894, and the date of the policy is April 11, 1894.

" The case being heard on a demurrer to evidence, all evidence of the defendant contradictory to that of the plaintiff is of course excluded, but all the evidence not contradicting the evidence of the plaintiff is considered.

"It is overwhelmingly proved by a number of witnesses, who are not contradicted in any way, that prior to this application for insurance—

"1. At least four applications for insurance made by Dezendorf had not been accepted at all.

"2. That at least six physicians had given unfavorable opinions upon his life, upon examinations made by them on these four applications for insurance, and that he was told, either by the doctors themselves, or by the agents who took him to the doctors, of the unfavorable opinions so given.

"3. That he had had a usual medical attendant for some time.

"4. That he had consulted his attendant as to his health a number of times within five years.

"So that upon this evidence alone the proof is convincing that the statements above mentioned in the application are false, and the policy void.

"But the plaintiff alleges that the agent of the company who took said application had knowledge of the falsity of these statements at the time he took it, and therefore the company is estopped to claim that the policy is void, and counsel for plaintiff bases such contention upon the evidence of plaintiff, of Doctor Meredith, and of Doctor Schenck, as to conversations had with said agent.

"(*a*) Doctor Schenck testifies that when McCullen, the agent, came to him to get him to examine Dezendorf, he told him that at one time he had examined Dezendorf for insurance in the Travellers Insurance Company, and had postponed passing him to a subsequent time. He further testified that some three or four days afterwards he had again examined him, and passed him for insurance in that company; and that he thinks that McCullen knew of this subsequent passing of Dezendorf by him, and that he told him of it, but he does not distinctly recollect telling him. McCullen testifies that when he saw Schenck, he had in his hands, and went over with him, a copy o

this very application to the Travellers Insurance Company, and Schenck does not deny this to be true. The original application is in evidence, and is dated March 31, 1893, or almost eight days before the application in this case. Certainly there is nothing in this evidence to fix knowledge of the falsity of any of the statements in the application on McCullen—all he learned from Schenck was that at one time he had postponed passing Dezendorf, and he knew, probably from Schenck himself, and certainly by the application to the Travellers Insurance Company, signed by Schenck, that he had subsequently passed him, and that he was a number one risk.

"(b) Dr. Meredith testifies that he told McCullen that he was Dezendorf's regular physician, and that he did not regard him as a first-class risk; but Dr. Meredith distinctly states that this conversation was about April 17, 1894, a day before or a day after, and hence ten days *after* the application to defendant company was made, and six days *after* the date of the policy. So that no notice is shown here.

"McCullen admits this conversation, but puts it at a later date than Meredith, and says that he reported it to the company, as he thought it his duty to do.

"(c) The only other evidence remaining by which to fix knowledge on McCullen is that of Burruss, the plaintiff. He testifies that when McCullen applied to him for insurance he told him that he understood that Mr. Dezendorf was in declining health, in bad health, that he had been declined by other insurance companies, and that he did not think he could write a policy on Dezendorf's life; that McCullen said that made no difference, that these risks were the kind his company took, and that it made no difference whatever. (It is proved by the evidence that the company had two tables of insurance—one for standard and one for sub-standard risks, and that Dezendorf was insured on the first table.)

"Burruss then told him that if he could get the examination and papers prepared he would take the insurance.

" He said that he had no personal knowledge as to Dezendorf's bad health, or as to his rejection by insurance companies, and did not tell the agent that he had, but told him that he *understood* these things, that he had *heard* them.

" He also says he knew the policy was to be issued by the home office of the company.

"And this is all the evidence of Burruss as to the knowledge of the agent as to the falseness of the statements in the application. Is it sufficient to estop the company? It is true that McCullen denies positively that Burruss ever made any such statement to him, but, for the purposes of this case, Burruss's testimony must be taken as true. To what did it amount? What knowledge did it convey to the agent?

" In the opinion of the court it simply amounted to this: that Burruss had heard rumors as to Dezendorf's health and rejection, and had doubts as to the feasibility of getting insurance on his life, only this and nothing more. It did not inform McCullen of the facts of bad health or rejection, but only of rumors of both. At the utmost it only put him on inquiry as to these rumors, which were contradicted by the very copy of Dezendorf's application to the Travellers Insurance Company, which McCullen had in his hands, and went over with Burruss at the time (Burruss does not deny this, though he had ample opportunity to do so), and subsequently these rumors were again contradicted by the unqualified statements of Dezendorf himself, made in his application in this case, and by the examination and certificate of Doctor Schenck therein made and certified.

" Even if the statement of Burruss to McCullen was knowledge to McCullen of the state of Dezendorf's health and his rejection, it in no way gave him knowledge of the falsity of his statements as to his having a regular doctor, and not having consulted any physician for five years—statements in the application which were material—warranted to be true, and if false, invalidated the policy.

" Upon the whole evidence, then—independent of the question as to whether McCullen was an agent of such a kind that his knowledge bound the company; and independent of the agreement in the application that as to it he was Dezendorf's agent, on which points it is unnecessary to pass in the view taken of the case—the court is of opinion that there is no evidence of any knowledge of the falsity of the statements made by Dezendorf in his application, brought home to the agent of the company; and most assuredly none of any such knowledge as would estop the company in this case."

*George McIntosh,* for the plaintiff in error.

*Edmund Pendleton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The court is of opinion that sec. 3252 of the Code, which provides that no failure to perform any condition or restrictive provision of a policy shall be a valid defence to an action thereon unless such condition or restrictive provision be printed in type of a specified size, or written with pen and ink in or on the policy, applies alike to the application and the policy issued thereon, where, as in the case under consideration, the application is expressly made a part of the contract of insurance. In such a case the application and the policy issued thereon, taken together, constitute the contract of insurance between the parties. Any other construction would enable the insurer to avoid the statute by putting all such conditions and restrictive provisions in the application alone.

In the case at bar it is conceded that the conditions and restrictive provisions, found in the application, the failure to perform which is relied on by the defendant, in part, as its defence to the plaintiff's motion, are in type smaller than that required by the statute. The clause in the application obnoxious to this provision of the statute must therefore be disre-

garded, and the case considered as if no conditions or restrictive provisions were embodied in the contract sued on.

Not relying on the condition that the answers of the insured to the questions contained in the application should be treated as warranties that the same were complete and true, the defendant company, by its plea, puts in issue the *bona fides* of the contract, by alleging that the answers made by the insured to certain material questions were absolutely false and untrue, and that they were made for the purpose of misleading, deceiving and defrauding the defendant, and did deceive and mislead it into issuing the policy sued on.

Recognizing and giving full force to the rule controlling in case of a demurrer to evidence, this plea is abundantly sustained. The questions and answers involved were most material, and the answers are shown to have been absolutely false, and it clearly appears that insured knew they were false when made.

The policy in question was issued for the benefit of a creditor of the insured, who is the plaintiff in error here, and it is contended that the beneficiary is not affected by the false representations of the insured, because the agent of the company who took the application had knowledge of the falsity of such statements at the time they were made, and that the company is, therefore, estopped to rely on the same as avoiding the policy.

Independent of the question whether such knowledge, if possessed by the agent, would bind the company, and prevent it from relying on the fraud of the insured, the evidence does not sustain the contention that any such knowledge was brought home to the agent. Great stress is laid on the fact that the agent applied to the beneficiary, and suggested his taking out the policy; that the beneficiary then told the agent he did not think a policy could be written on the life of the insured; that he understood him to be in bad health, and to have been declined by other insurance companies; that, in reply, the agent said that made no difference, that his company took

risks declined by other companies. This reply of the agent is fully explained by the fact, perfectly understood by the insured, that the company took first-class risks and second-class risks, and that the premium was regulated by the class to which the insured belonged, the premium for a second being very much higher than that for the first-class risk. The insured stood his examination for the policy before the medical examiner, and, in his application, answers the questions propounded without any qualification, in such a way as to entitle him to be received as a first class risk. The policy was issued upon his life as a first-class risk, received by the beneficiary as such, and the premium paid, known by him to be only the amount required for a first-class risk.

The beneficiary is shown to have been a man of business experience, carrying a large amount of insurance on his own life. He knew the usual course was for the insured to make out and sign an application, and for the company to issue the policy on the faith of the statements therein made, and he does not claim to have understood or supposed that the defendant company pursued any different course in that respect. The statement by the beneficiary to the agent that he understood the insured to be in bad health, and to have been rejected by other companies, did not establish the fact that those things were true. At most, it could only have put the agent on enquiry. The result of that enquiry was to show, by his applications to other companies, by his own unqualified statements in the application to the defendant company, and by the certificate of the medical examiner, that he was in good health, and had not been rejected by other companies.

It would hardly be contended that, if the insured had taken out this policy for his own benefit, his estate could recover it in the face of the gross fraud shown to have been perpetrated by him in procuring it. There is nothing in the circumstances of the case to place the beneficiary in any better position than the insured would have occupied had the policy been for his

benefit. Where insurance is effected upon the life of a third person for the benefit of a creditor, and misrepresentations of material matters inducing the contract are made by the party whose life it insured, it will vitiate the policy, although the beneficiary was ignorant of such false representations.

For these reasons the judgment complained of must be affirmed.

*Affirmed.*