THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, PLAINTIFF-RESPONDENT, v. NEW HORIZONS, INC., A CORPORATION, DEFENDANT-APPELLANT.

Argued October 21, 1958—Decided December 1, 1958.

*Mr. Herbert M. Gannet* argued the cause for appellant (*Messrs. Gannet, Widmark & Goldberg,* attorneys; *Mr. Theodore Sager Meth,* of counsel).

*Mr. James J. Langan* argued the cause for respondent (*Messrs. Emory, Langan, Lamb & Blake,* attorneys; *Mr. Eugene T. O'Neill,* of the New York Bar, on the brief).

The opinion of the court was delivered by

WACHENFELD, J.  This is an action for rescission and cancellation of a policy of insurance issued on the life of one Stephen Yafchak by the plaintiff, the Equitable Life Assurance Society of the United States.  Defendant, New Horizons, Inc., is the assignee of the policy and counterclaimed to recover its full amount.  The material facts are undisputed and in the trial court both parties moved for summary judgment.  Judgment was granted in plaintiff's favor, and the defendant appealed.  We granted certification of the appeal to the Appellate Division on our own motion.

The policy in question is sometimes referred to as "key man" insurance.  This type of insurance is usually taken out by an employer upon the life of an essential employee.  Although the employee is the "insured," the employer is the applicant for, and owner and beneficiary of, the policy.  The purpose of the insurance is to compensate the employer for the economic detriment occasioned by the loss, through death, of the important services of its employee.

In 1955 Stephen Yafchak was the general manager of Linden Tool Company, Inc.  He supervised sales, production, design and general operations and was, without doubt, the key employee of the enterprise.  When New Horizons, Inc., purchased Linden Tool, it insisted that the contract of sale be conditioned upon Yafchak's agreeing to remain as general manager.

The subject policy, in the face amount of $20,000, was issued to Linden Tool on June 10, 1955 and contained a clause providing for a two-year contestability period.  The application for the policy was signed by both Yafchak and Linden Tool Co., Inc., through its president, Herman Nathanson, and consisted of two parts.  The second part relates to the medical history of the insured and the in-

formation contained therein was supplied by Yafchak, who affixed his signature immediately beneath a stipulation reading:

"I have read the foregoing answers which are true, full and complete, and agree that such answers shall be part of the application, which shall consist of both Part I and Part II, and that such answers shall also become part of any policy contract that may be issued on the strength thereof."

The first part of the application was signed by Nathanson, in his capacity as president of Linden Tool, as well as by Yafchak. It contained in the body the assertion that:

"It is hereby agreed that any policy issued hereon shall not take effect until the first premium thereunder has been paid during the good health of the person whose life is proposed for insurance; * * *. All of the foregoing statements and all those contained in Part II hereof are true, and are offered to the Society as an inducement to issue the policy or policies for which application is hereby made."

Additionally, above the signature of Nathanson appears a clause providing:

"The undersigned hereby applies for the insurance herein specified and certifies that the statements herein contained are correct."

And over Yafchak's signature on Part I is found the agreement:

"I hereby consent to the insurance herein specified and certify that all the representations and statements made herein are true."

Defendant concedes that Yafchak gave false negative answers to all of the following questions, which are found in Part II of the application:

"6. Have you ever had or been treated for any disease or disorder of: (Answer each separately.)
    c. the heart, blood vessels or blood?
7. Have you ever:
    b. consulted a physician about a pain in the chest or shortness of breath?
    g. had any other illness or injury?

8. a. Have you ever had an electrocardiogram made?
9. Have you consulted or been treated by any physician, practitioner or specialist during the past five years?"

In actuality, the insured had been treated for an acute cardiac decompensation on August 12 or 13, 1954 after he had complained of shortness of breath and a pain in his chest. He had remained under a physician's care for some time thereafter, and in the latter part of 1954 two electrocardiograms had been taken which showed that his heart was functioning abnormally. The doctor who had first treated Yafchak diagnosed the insured's ailment as coronary sclerosis accompanied by dyspnea and peripheral edema. In addition, the insured had suffered from a mild condition of hyperthyroidism.

The "Proofs of Death—Physician's Statement" submitted to the plaintiff by one of Yafchak's physicians listed the immediate cause of death, which had occurred on April 20, 1957, as "coronary occlusion" and the antecedent causes, giving rise to the direct cause of death as "coronary sclerosis (insufficiency)" and "generalized arteriosclerosis."

In the trial court plaintiff and defendant reached certain important accommodations respecting the facts of the case. Defendant not only stipulated that the answers to the questions quoted above were false, but it also conceded that the plaintiff insurance company had relied on such answers in issuing the policy and that the answers were material to the risk. Plaintiff, on the other hand, stipulated that neither defendant nor its assignor, Linden Tool Co., Inc., had had knowledge of the falsity of Yafchak's representations.

The two grounds asserted by plaintiff as justifying a judgment of rescission were: (1) that it had been induced by material misrepresentations to issue the policy; and (2) that the first premium on the policy had not been paid during the good health of the insured.

The trial judge ruled in plaintiff's favor on the first ground and, since this was sufficient for the decision of the case, declined to express an opinion as to the legal effect of the second.

■ The plaintiff insurer would clearly be entitled to rescind and to have the subject policy cancelled if Yafchak himself had applied for its issuance and paid the premiums thereunder. See, *e. g., Gallagher v. New England Mut. Life Ins. Co. of Boston,* 19 *N. J.* 14 (1955). Defendant urges that a different rule should apply, however, since its assignor, Linden Tool Co., Inc., was the applicant for and owner of the policy, not Yafchak.

It is urged that Linden Tool's certification to the truth of all of the statements contained in the insurance application cannot be taken literally since the company did not have, and could not have obtained except at great inconvenience, the facts pertaining to Yafchak's physical condition. Defendant maintains that the insurer as well as Linden Tool recognized this fact and that under these circumstances Linden Tool's certification should be regarded as a mere statement of opinion concerning Yafchak's state of health. It contends that with respect to "key man" insurance the onus should be placed entirely upon the insurer to ascertain through a physical examination whether the prospective insured is an acceptable risk. Defendant concludes that the employer who procures such insurance should be held responsible for its employee's misrepresentations only when the employer actively encourages their making or actually knows of their falsity.

Plaintiff and defendant are both innocent parties, but they do not stand on the same footing with respect to the issues presented.

■ An insurance contract is preeminently one of the utmost good faith. *Gallagher v. New England Mut. Life Ins. Co. of Boston, supra; Stipcich v. Metropolitan Life Ins. Co.,* 277 *U. S.* 311, 48 *S. Ct.* 512, 72 *L. Ed.* 895 (1928); *Atlantic Casualty Ins. Co. v. Interstate Ins. Co.,* 28 *N. J. Super.* 81 (*App. Div.* 1953). The insurance company customarily relies on the truthfulness of the insured's rendition of his medical history. It is physically and economically impossible for an insurer to give every potential insured an elaborate medical examination which will disclose the less

obvious defects in his health. Indeed, it is common knowledge that many insurance policies of certain types and under certain amounts are issued without any prior examination by an insurance company doctor.

With this background in mind, we must interpret the terms of the insurance contract in controversy as holding Linden Tool Co., Inc., bound by Yafchak's misrepresentations. Of course, any rights which the plaintiff insurer has against Linden Tool are equally applicable against the defendant, the assignee of the policy.

The president of Linden Tool, Herman Nathanson, signed the insurance application. This not only states that the applicant "certifies that the statements herein contained are correct," but it also provides:

"* * * All of the foregoing statements and *all those contained in Part II hereof* are true, and are offered to the Society as an inducement to issue the policy or policies for which application is hereby made." (Emphasis supplied)

Thus, Linden Tool recognized and agreed that the insurer should issue the policy in reliance upon the truth of the medical history related by Yafchak. It was clearly the intent of Equitable Life that the applicant, Linden Tool, should be chargeable with any misrepresentations made by the insured. And Linden Tool assented to this condition when it signed the policy.

The clauses in question are meaningless unless they apply to Linden Tool Co., Inc. The application specifically designates Linden Tool as the applicant for, and owner and beneficiary of, the policy. Yafchak had no interest in the policy or its proceeds; he was merely the "person whose life is proposed for insurance." The issuing company would never have had any reason or opportunity to raise the defense of misrepresentation against Yafchak or beneficiaries selected by him. In accordance with the terms of its contract, it obviously intended, therefore, to make Linden Tool's rights to the coverage of the policy dependent upon the truth of the statements contained in Part II of the application.

Linden Tool's responsibility for Yafchak's misrepresentations also arises from another source. The insured was actually acting as an agent of his employer in procuring the issuance of the policy. Linden Tool could not have obtained the policy without its employee's consent and cooperation. Yafchak did not desire coverage for his own protection; he was acting in behalf of Linden Tool, which wanted the policy in order to protect its interests. Linden Tool "sponsored" Yafchak as a prospective insured and, in effect, authorized him to speak for it in furtherance of its business affairs. In an action brought for rescission, an agent's false statements bind his principal if such agent was authorized to speak for the principal in the course of obtaining the particular contract. *Restatement, Agency,* § 162. See also *Kavky v. Harris,* 102 *N. J. L.* 371 (*E. & A.* 1926); *Doyle v. Loft, Inc.,* 98 *N. J. L.* 516 (*E. & A.* 1923); *Indovina v. Metropolitan Life Ins. Co.,* 334 *Pa.* 167, 5 *A. 2d* 556 (*Pa. Sup. Ct.* 1939); 5 *Williston, Contracts,* § 1518 (1937 *ed.*).

The fact that Linden Tool was ignorant of Yafchak's deceptions is of no avail. Innocent material misrepresentations will, in equity, support rescission of an insurance contract. Scienter is not an essential element of equitable fraud. *Gallagher v. New England Mut. Life Ins. Co. of Boston, supra; Metropolitan Life Ins. Co. v. Tarnowski,* 130 *N. J. Eq.* 1 (*E. & A.* 1941); *Metropolitan Life Ins. Co. v. Lodzinski,* 124 *N. J. Eq.* 357 (*E. & A.* 1938); *Locicero v. John Hancock Mut. Life Ins. Co.,* 32 *N. J. Super.* 300 (*App. Div.* 1954); *Metropolitan Life Ins. Co. v. Chambers,* 142 *N. J. Eq.* 440 (*Ch.* 1948); *Metropolitan Life Ins. Co. v. Somers,* 137 *N. J. Eq.* 419 (*Ch.* 1946).

The result we reach not only seems eminently fair but is supported by authority in other jurisdictions.

In *Bradach v. New York Life Ins. Co.,* 260 *Wis.* 451, 51 *N. W. 2d* 13 (*Wis. Sup. Ct.* 1952), the plaintiff sued to recover the face amount of insurance he had taken out upon the life of his partner, Giese. The defendant insurer

counterclaimed for rescission of the policy on the ground that Giese had falsified his answers on the insurance application to the questions whether he had ever had high blood pressure or had ever consulted a doctor concerning an ailment of the heart, blood vessels or lungs. Part I of the application was signed by Bradach and provided:

"That all statements, representations, answers and agreements made in writing over Proposed Insured's signature in connection with this application, including those made before any medical examiner of the New York Life Insurance Company (hereinafter called 'Company'), shall form a part hereof, and that the Company believing them to be full, complete and true shall rely and act upon them accordingly."

In answer to Bradach's contention that he should not be held responsible for Giese's misrepresentations, the court said:

"Plaintiff points to the fact that in most life insurance cases which have reached the courts the insured has been the purchaser and owner of the policy, and urges that there are stronger reasons for holding that a policy is invalidated by false statements in the application in those cases than in the instant case where a person other than the purchaser or owner of the policy is the insured. No authority is cited in support of such contention, and *sec.* 209.06, *Stats.* makes no distinction between the case where the insured is the purchaser and owner of the policy and where he is not. Each life insurance company undoubtedly has well-defined rules as to the health requirements of persons it is willing to insure at its standard rates. If it is by false statements in the medical portion of a policy application induced to insure someone whom it would be barred from insuring under its rules, and such false statements have increased the risk, there would seem to be no logical reason why it should not be permitted to raise such facts as a defense regardless of whether the insured who made the false statements is the purchaser or owner of the policy, or whether such owner is his wife, partner, corporate employer, or other third person."

See also *Burruss v. National Life Ass'n of Hartford, Conn., 96 Va.* 543, 32 *S. E.* 49 (*Va. Sup. Ct. App.* 1899); 12 *Appleman, Insurance Law and Practice,* § 7306.5 (1958 supp.). *Cf. Baker v. Mutual Life Ins. Co. of New York, 32 Wash. 2d* 340, 201 *P. 2d* 893 (*Wash. Sup. Ct.* 1949); *Wilbon v. Washington Fidelity Nat. Ins. Co., 181 Ark.* 1127, 29 *S. W. 2d* 680 (*Ark. Sup. Ct.* 1930).

Defendant attempts to emphasize the equities of its position by pointing out that an adverse decision will deprive it of insurance protection upon which it had relied and that such deprivation will be effected despite the absence of any wrongdoing on its part. The answer to this is twofold. First, the terms and intention of the insurance contract may not be flouted. Second, defendant was not entitled to any protection since Yafchak was uninsurable. The premiums defendant, or its predecessor, Linden Tool Co., Inc., has paid will be returned with interest.

To hold, in the situation *sub judice,* that the defense of material and fraudulent misrepresentation cannot prevail against the owner and beneficiary of the policy of "key man" insurance in question, would make such policies virtually incontestable. This is contrary to the intent and terms of the instant contract and ignores Linden Tool's "adoption" or "ratification" of the misrepresentations made by Yafchak.

The judgment below is affirmed.

WEINTRAUB, C. J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.