**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-1481

KAY PARK,

Appellant.

v.

METROPOLITAN LIFE INSURANCE COMPANY

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-07-cv-03195)
District Judge:  Honorable Katharine S. Hayden

Submitted under Third Circuit LAR 34.1
on January 28, 2011

Before:  FUENTES, CHAGARES and ROTH, Circuit Judges

(Opinion filed: March 30, 2011)

O P I N I O N

**ROTH**, Circuit Judge:

Appellant Kay Park is the primary beneficiary of a $1,000,000 whole life

insurance policy acquired by and in the name of James Park (Mr. Park), her former

husband, who died on October 5, 2006, of lymphoma.  She sued the insurer, Metropolitan

Life Insurance Company (MetLife), after it refused to pay on the policy following her husband's death because of his alleged misrepresentations when purchasing the insurance policy. Park appeals the order of the United States District Court for the District of New Jersey granting MetLife's Motion for Summary Judgment. For the reasons that follow, we will affirm the judgment of the District Court.

## I. Background and Procedural History

Although born in Korea, Mr. Park was an American citizen who passed a citizenship test conducted in English, ran several successful businesses, and lived in the United States for approximately thirty years prior to applying for the contested insurance policy. Mr. Park considered himself a fluent English speaker. On multiple occasions, Mr. Park stated that he understood both Korean and English and did not need a Korean-to-English translator.

In November 2004, Mr. Park obtained life insurance in English from MetLife. Mr. Kwak, a MetLife agent who speaks Korean, presented the insurance application to Mr. Park on or about November 11, 2004. Kwak sat next to Mr. Park, requested that Mr. Park read each question, asked whether Mr. Park understood the question, and recorded Mr. Park's responses. Although Mr. Park provided numerous answers to health-related questions, his answers to a few questions inform our conclusions. First, when asked whether he had "ever used tobacco products," Mr. Park answered, "No." Second, when asked whether he had "EVER" received treatment for, or ever been diagnosed with, high blood pressure, chest pains, heart attack or any other heart disease, Mr. Park answered, "No." Third, when asked whether he had, in the past six months, taken any medication or

2

been under observation or treatment, Mr. Park answered, "No." Finally, when asked whether any sibling or parent "ever had heart disease, coronary artery disease, high blood pressure, cancer, diabetes, or mental illness," Mr. Park answered, "No." At the conclusion of the application, Mr. Park provided his signature to confirm that he completed the application to "the best of [his] knowledge and belief," that "all statements are true and complete," and acknowledging that his statements formed "the basis of any policy issued."

On November 24, 2004, Dong Soon Yi, a fluent English and Korean speaker, administered the Paramedical Exam portion of the application to Mr. Park. Yi conducted the entire examination in Korean. Although Mr. Park provided numerous answers to health-related questions presented in the Paramedical Exam portion of the application, his answers to a few questions inform our conclusions. First, when asked to indicate the date he last smoked, Mr. Park answered, "5/2003." Second, when asked whether he had "EVER" received treatment for, or ever been diagnosed with, high blood pressure, chest pains, heart attack or any other heart disease, Mr. Park answered, "No." Additionally, when asked whether any sibling or parent "ever had heart disease, coronary artery disease, high blood pressure, cancer, diabetes, or mental illness," Mr. Park answered, "No." At the conclusion of the Paramedical Exam, Mr. Park provided his signature to confirm that the answers were "correctly written, as given by [him], and are true and complete to the best of [his] knowledge and belief." Not only did Mr. Park attest to the accuracy and completeness of his answers, but the policy itself contains a 10-day "free look" provision allowing him to review the application for accuracy and return the policy

3

prior to its operative date of commencement. Mr. Park did not return the policy and it became effective on November 15, 2004.

Mr. Park died 23 months later on October 5, 2006. A month later, Kay Park submitted a claim for benefits under the policy. The policy sets forth a contestability period of 24 months, which permits MetLife to conduct inquiries into the veracity of answers provided in the application.[1] MetLife's inquiry revealed that several of Mr. Park's statements in his insurance application and subsequent Paramedical Exam were untrue. The record demonstrates that (1) only one month prior to the application, on or about October 14, 2004, Mr. Park had a chest x-ray performed in Englewood Hospital's emergency room and was diagnosed with pneumonia; (2) on or about October 14, 2004, Mr. Park was taking antibiotics prescribed by a physician; (3) Mr. Park smoked between one and one-and-a-half packs of cigarettes per day for 25 years, until approximately December 2005, (4) Mr. Park made four complaints between April 1999 and June 2004 regarding chest pain, sharpness, chest tightening and palpitations to his physician and EKGs were performed; and (5) Mr. Park's father was diagnosed with stomach cancer and his sister was diagnosed with uterine cancer.

In response to Park's claim, MetLife had a claims examiner, a medical underwriter, and a lay underwriter review the information and medical records obtained during the claims process. Each reviewer opined that Mr. Park's true medical history would have affected the issuance of the policy or the policy's premiums. MetLife

---

[1] The policy provides, in relevant part, that "[MetLife] will not contest the validity of [a] policy in force during the insured's lifetime 2 years from the date of the Policy."

informed appellant by letter dated April 30, 2007, that because of Mr. Park's misrepresentations and their effect on the underwriting of the policy, MetLife was denying liability on the policy. Park filed her complaint in the District of New Jersey on July 11, 2007 seeking to enforce payment on the insurance policy. MetLife answered Park's complaint on October 17, 2007, and counterclaimed seeking a declaration that the policy was rendered void and rescinded by Mr. Park's material misrepresentations. After discovery, the District Court granted summary judgment for MetLife. Park appealed.

## II. **Jurisdiction and Standard of Review**

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. 1291.

We exercise plenary review over a district court's order granting summary judgment and apply the same standard that the district court should have applied. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009) (citing Fed. R. Civ. P. 56(c)). This determination is made by viewing the "facts in the light most favorable to the nonmoving party and draw[ing] all inferences in that party's favor." *Farrell*, 206 F.3d at 278.

## III. **Discussion**

New Jersey law imposes a duty of "utmost good faith" upon insurance applicants, *Gallagher v. New England Mut. Life Ins. Co.*, 114 A.2d 857, 861 (N.J. 1955), because

5

insurers must rely on "the truthfulness of the insured's rendition of his medical history," *Equitable Life Assurance Soc'y v. New Horizons, Inc.*, 146 A.2d 466, 469 (N.J. 1958). "An insurer is entitled to relief when it relies on incorrect information provided by an insured in an insurance application if the information was material either to the insurer's decision to insure or to the terms of the contract." *Massachusetts Mut. Life Ins. Co. v. Manzo*, 584 A.2d 190, 197 (N.J. 1991). Thus, "an insurer may rescind a policy if the insured knowingly misrepresented facts that would have affected the estimate of the risk and the premium charged." *Id.* at 193.

Park contends that the District Court failed to construe the evidence in the light most favorable to her, the nonmoving party, regarding whether Mr. Park's statements were not made in good faith or were knowingly false when made. The record demonstrates that Mr. Park made material misrepresentations in his insurance application. In an effort to deflect attention from Mr. Park's admittedly false statements, Park contests that the "'false answers' Mr. Park was blamed for were induced and created by defendant's own insurance agent, Kwak." This claim is belied by Mr. Park's own assertions that he spoke English, his attestation that his application answers regarding his history of health were truthful and complete, and the inconsistency between the answers given to Kwak and those given to Yi, who interviewed Mr. Park in Korean.

We agree with the District Court's conclusion that no reasonable juror could conclude from the record that Mr. Park's answers were accurate or immaterial representations. We also agree with the District Court's conclusion that no reasonable juror could conclude that Mr. Park's answers were induced or created by Kwak. Nor

6

could a reasonable juror could conclude that Mr. Park did not knowingly misrepresent his medical history. Therefore, it was proper for the District Court to grant MetLife's summary judgment motion and enter judgment in MetLife's favor on its counterclaim for rescission.

## IV. Conclusion

For the reasons set forth above, we will affirm the judgment of the District Court.

7