NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4545
_____

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

v.

THE ESTATE OF JOSEPH A. CERNIGLIA;
CWB1, LLC; COMPANIA HOLDINGS CORPORATION;
MELISSA CERNIGLIA; VALLEY NATIONAL BANK;
RICCARDO BOTTI; KEVIN WYNN


CWB1, LLC.,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-10-cv-05597)
District Judge:  Honorable William H. Walls
_____

Argued July 12, 2011
Before:  RENDELL, SMITH and FISHER, *Circuit Judges*.

(Filed: July 28, 2011 )

Edward Griffith (Argued)
Bolatti & Griffith
45 Broadway, Suite 2200
New York, NY  10006
       *Counsel for Appellant, CWB1, LLC*

Anthony J. Fusco, Jr.[1]
Fusco & Macaluso
150 Passaic Avenue
P.O. Box 838
Passaic, NJ  07055
        *Counsel for Appellees, Riccardo Botti
        and Kevin Wynn*

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter
100 Mulberry Street
Three Gateway Center
Newark, NJ  07102
        *Counsel for Guardian Life Insurance
        Company of America*

———————

## OPINION OF THE COURT

———————

FISHER, *Circuit Judge*.

CWB1, LLC ("CWB1") appeals from an order of the District Court denying its request for a preliminary injunction.  For the reasons stated herein, we will reverse the District Court's order and direct that the injunction be issued in CWB1's favor.

I.

---

[1] The Court notes that Counsel for Botti and Wynn, Anthony J. Fusco, Jr., failed to appear for the scheduled oral argument in this matter, despite his acknowledged receipt of the notification of oral argument.  Although we decline to take further action in this regard, his absence and subsequent correspondence with the Court demonstrates a lack of professionalism rarely seen and hopefully not repeated before the Court.  We also note that Mr. Fusco's absence had no bearing on the outcome of this appeal.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Joseph A. Cerniglia was a renowned chef and partial owner of Campania, a restaurant in Fairlawn, New Jersey. CWB1, a New Jersey limited liability company, owned Campania. Riccardo Botti, Kevin Wynn, and Cerniglia held ownership interests in CWB1 as members. On October 25, 2005, CWB1 purchased a life insurance policy (the "Policy") from The Guardian Life Insurance Company of America ("Guardian"). The Policy named Cerniglia as the insured, and listed CWB1 as the owner and beneficiary. On September 16, 2010, Cerniglia, Botti, and Wynn sold their interests in CWB1 to Campania Holdings Corporation ("CHC") pursuant to a transfer agreement. Philip Neuman is the managing director of CHC. On September 24, 2010, Cerniglia died. In the months following, Campania's business declined significantly, and it was eventually closed.

After Cerniglia's death, Guardian faced competing claims to the Policy death benefit, and filed an interpleader complaint against CWB1, CHC, Cerniglia's estate, Melissa Cerniglia (Cerniglia's widow), Botti, Wynn, and Valley National Bank.[2] CWB1 and CHC filed an answer and a cross-claim against the estate, Melissa Cerniglia, Botti, and Wynn seeking a declaratory judgment that those parties had no rights under the

---

[2] Guardian subsequently released Valley National Bank from the lawsuit.

Policy and moved for a preliminary injunction directing payment of the Policy death benefit. Neuman submitted a declaration describing the negative impact of Cerniglia's death on Campania's business. In response, Botti and Wynn disputed payment of the Policy death benefit to CWB1 based on their belief that ownership of CWB1 had reverted to them because Neuman breached the transfer agreement. Botti and Wynn suggested that a breach of contract action would be filed, but no such claims were before the District Court.[3] In the meantime, the estate and Melissa Cerniglia withdrew their claims to the Policy death benefit.

At the preliminary injunction hearing before the District Court, CWB1 argued that all parties agreed that CWB1 was the beneficiary of the policy and, notwithstanding any breach of contract litigation, the Policy death benefit should be paid to the company. Counsel for Botti and Wynn stated that "[o]bviously we all agree that the money is to be paid to the corporation," meaning, to CWB1. (App. at 199.) But, Botti and Wynn argued that it should not be paid because of the uncertainty as to the proper ownership of CWB1. The District Court rejected CWB1's arguments, ruling that the company failed to establish a likelihood of success on the merits or irreparable harm. The District Court reasoned that ownership of CWB1 would have to be resolved before the company received the Policy death benefit. The District Court also concluded that CWB1's allegations of irreparable harm were insufficient and unsupported. In doing so, the

---

[3] The parties have represented to the Court that a breach of contract claim is pending in New Jersey state court.

District Court refused to allow Neuman to testify regarding the statements set forth in his declaration. On November 30, 2010, the District Court granted Guardian interpleader relief and released it from any liability. The sum of the Policy death benefit, plus interest, was deposited with the clerk of court. CWB1 filed a timely notice of appeal.[4]

## II.

"[W]e use a three-part standard to review a District Court's decision to grant or deny a preliminary injunction." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). "The District Court's findings of fact are reviewed for clear error, the District Court's conclusions of law are evaluated under a plenary standard, and the ultimate decision to grant [or deny a] preliminary injunction is reviewed for abuse of discretion." *Id.*

## III.

Federal Rule of Civil Procedure 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). In an interpleader action, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Prudential Ins. Co. of Am. v. Hovis*,

---

[4] The District Court had jurisdiction over Guardian's interpleader complaint and CWB1's counterclaim against Guardian pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction. The District Court had supplemental jurisdiction over CWB1's cross-claim against Botti and Wynn pursuant to 28 U.S.C. § 1367(a). Our source of jurisdiction is 28 U.S.C. § 1292(a)(1).

553 F.3d 258, 262 (3d Cir. 2009).[5] Then, "the court determines the respective rights of the claimants to the interpleaded funds." *Id.* In evaluating whether a preliminary injunction should issue, we consider "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009).

## A. Likelihood of CWB1's Success on the Merits

With respect to the likelihood of success on the merits, CWB1 argues that the District Court erred in concluding that the litigation regarding ownership of the company had to be resolved before the Policy death benefit could be paid. We agree. The litigation over ownership of CWB1 is irrelevant to CWB1's claim. Indeed, the Policy is explicit on this point – CWB1 is the named beneficiary. (App. at 60 ("Guardian will pay the death proceeds to the beneficiary[.]")) Moreover, New Jersey law makes clear that members of a limited liability company are distinct from the LLC itself. The New Jersey Limited Liability Company Act, 42 N.J.S.A. § 42:2B *et seq.*, describes the limited liability company as a distinct legal entity, separate and apart from its member owners. New Jersey courts also have emphasized that a life insurance policy is a company asset

---

[5] The threshold requirements for rule interpleader were satisfied. Diversity of citizenship was present between Guardian (a citizen of New York) and the Estate, Melissa Cerniglia, CWB1, Botti, and Wynn (citizens of New Jersey). The amount in controversy exceeded $75,000.

where, as here, the policy names an employee as an insured, the policy lists the company as the beneficiary, and the company pays for the policy. *See*, *e.g.*, *Equitable Life Assur. Soc'y. of U.S. v. New Horizons, Inc.*, 146 A.2d 466, 467 (N.J. 1959) ("Although the employee is the 'insured,' the employer is the applicant for, and owner and beneficiary of, the policy."); *Mitzner v. Lights 18, Inc.*, 660 A.2d 512, 514 (N.J. Super. Ct. App. Div. 1994) *aff'd* 660 A.2d 480 (N.J. 1995) ("[K]ey man insurance, which reimburses an employer upon the death of a key employee or principal, is owned by the employer who also applies for and is the beneficiary of the policy."). CWB1, Botti, and Wynn agree that the company is, indeed, the lawful beneficiary. The argument advanced by Botti and Wynn focuses on their belief that the Policy death benefit should not be paid to CWB1 because they assert Neuman is no longer the lawful owner. This contention ignores the formalities of the limited liability company and incorrectly equates Neuman with CWB1. Even if CHC, with Neuman as managing director, is not the lawful owner of CWB1, that does not change the fact that CWB1 is the beneficiary. Because CWB1 demonstrated a likelihood of success on the merits in that it is the beneficiary of the Policy death benefit, the District Court erred in concluding otherwise.

### B. Likelihood of Irreparable Harm to CWB1

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). Mere economic harm is insufficient; rather, "the plaintiff must demonstrate

7

potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (internal quotation marks omitted).

At the preliminary injunction hearing and in its submissions to the District Court, CWB1 maintained that it would suffer irreparable harm because Campania would be forced to shut down, employees would be laid off, and the restaurant would lose its growing customer base. CWB1 argues that the District Court erred in rejecting its evidence of impending harm and refusing to allow Neuman to testify regarding the company's financial status. We agree. Although CWB1 essentially seeks a monetary payment, its posture as a claimant to an interpleader stake distinguishes this case from the traditional notion of economic harm. CWB1 may recover only the Policy death benefit; monetary damages in the traditional sense are not available to it in this instance. Moreover, its allegations – amply supported in Neuman's declaration – of the impending loss of key employees, as well as a decline in its customer base, sufficiently demonstrates a likelihood of irreparable harm to CWB1.[6] *See id.* at 726. Without the payment of the Policy death benefit, CWB1 cannot be made whole. *See Brenntag Int'l. Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is found "where, but

---

[6] Because CWB1 properly supported its allegations of irreparable harm, the District Court abused its discretion in prohibiting Neuman from testifying to that effect.

for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied"). This is due to the fact that CWB1's main asset was Cerniglia's talent as a chef, which the Policy was designed to protect and allow the company to continue operating upon his death. The Policy death benefit is a necessary financial resource that must be paid without delay if the company has any possibility of rehabilitating its business. Because CWB1 has no other remedy at law, the District Court clearly erred in finding that CWB1's harm was compensable by monetary damages. Given that the issuance of a preliminary injunction is "the only way of protecting [the company] from harm," *Instant Air Freight*, 882 F.2d at 801, CWB1 established a likelihood of irreparable injury.

### C. Potential Harm to Botti and Wynn

Although the District Court did not address the remaining two requirements, we may nonetheless evaluate them where, as here, the record provides a sufficient factual basis to do so. *See Kos Pharm.*, 369 F.3d at 712. Before the District Court, CWB1 argued that Botti and Wynn would suffer no harm if the injunction was issued. Botti and Wynn did not articulate any allegations of harm on their behalf. Their focus on alleged breaches of the transfer agreement was misplaced, as these claims were not before the District Court. "We have recognized that [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Id.* at 729. Considering that CWB1 established a strong likelihood of success, any harm Botti and Wynn might suffer

is outweighed by the harm to CWB1 absent an injunction. CWB1 met its burden to establish this factor.

### D. Public Interest

Finally, CWB1 maintains that the public interest favors the grant of a preliminary injunction. "[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Such is the case here. As CWB1 alleged, directing payment of the Policy death benefit to CWB1 furthers the public interest by facilitating the company's ability to continue operations and enforceing the plain language of the Policy. Because CWB1 met its burden to establish each element required to obtain a preliminary injunction, the District Court abused its discretion in rejecting its request. Going forward, the District Court should order the release of the Policy death benefit to CWB1 without delay.

### IV.

For the foregoing reasons, we will reverse the order of the District Court and remand so that the District Court may direct payment of the Policy death benefit to CWB1.