BETTY SHAPIRO, complainant,

*v.*

METROPOLITAN LIFE INSURANCE COMPANY, defendant.

[Decided April 4th, 1932.]

*Messrs. Seclow & Nessanbaum,* for the complainant.

*Messrs. Perkins, Drewen & Nugent,* for the defendant.

BIGELOW, V. C.

Complainant sues on a policy of insurance issued by defendant May 1st, 1930, upon the life of Barney Laden, who died one year later. Complainant asks a decree that defendant endorse the policy so as to designate complainant as beneficiary and that defendant pay to complainant the amount due on the policy. Defendant, by counter-claim, prays that the policy be canceled on the ground that it was fraudulently obtained by Barney Laden. The actual controversy arises upon the counter-claim and not upon the bill. Laden told the company's agent that he was forty-five years old; actually, he was fifty-five years of age. This does not avoid the policy but reduces the amount payable thereon to such a figure as the premium paid would have purchased at the correct age. This misrepresentation has some importance as indicating on Laden's part a willingness to deceive the company. In the application for the policy, he stated that the condition of his health was good, that he had never been sick; that he had

no physical defect or infirmity, and that he had never suffered from any of a number of complaints, including asthma, bronchitis and tumor. The following question Laden answered in the negative: "Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, and names of physicians." Complainant alleges that the statements of Laden were false and fraudulent and that defendant, having no knowledge of their falsity but relying upon them, did issue the policy which is the subject of this suit.

Counsel for the insurance company urges that in this court proof of an intent to deceive is unnecessary to entitle the company to relief; that it is sufficient if the representations made by Laden were false in fact, were material, and were relied upon by the company. *Commercial Casualty Insurance Co.* v. *Southern Surety Co., 100 N. J. Eq. 92; affirmed, 101 N. J. Eq. 738.* That case states the common distinction between fraud which may be the basis of a judgment at law and fraud which is cognizable only in equity. The distinction cannot, I believe, aid defendant. *P. L. 1907 p. 133; Comp. Stat. p. 2869 § 94 ¶ 4,* requires that every policy of life insurance shall stipulate that "all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties. Any waiver of this provision shall be void." The policy in suit contains this agreement.

The effect of this statutory provision has been construed by the court of errors and appeals: "The policy will be avoided for a misrepresentation in the application, made a part thereof, if the misrepresentation be material and fraudulent, that is to say, if it be the statement of something as a fact which is untrue and which the insured stated knowing it to be untrue and with an intent to deceive or which he stated positively as true, without knowing it to be true and which had a tendency to mislead; such fact, in either case, being material to the risk." *Kerpchak* v. *John Hancock Mutual Life Insurance Co., 97 N. J. Law 196; Locker* v. *Metropolitan Insurance Co., 107 N. J. Law 257.* The reference to

a positive statement of something as a fact, when the applicant does not know it to be true, presupposes, I believe, that the applicant is aware of his ignorance. For instance, an applicant may believe and may state positively that his health is good, although he may be the unwitting victim of disease. I do not understand that the court of errors and appeals intended to say that in such case the policy would be voided. The court had in mind the principles discussed in *Cowley* v. *Smyth, 46 N. J. Law 380; Cummings* v. *Cass, 52 N. J. Law 77,* and *Crosby* v. *Wells, 73 N. J. Law 790.*

The cases cited above arose in the law courts. But the statute of 1907 and the provision in the policy based thereon, have the same effect whether the litigations be at law or in equity. The interpretation given them by the court of errors and appeals is conclusive here. A false statement made by an applicant for life insurance, even though material, is not a ground for avoiding the policy issued in reliance thereon, unless made with an intent to deceive or unless it relates to a matter of which the applicant was consciously ignorant. In *Metropolitan Life Insurance Co.* v. *Sussman, 109 N. J. Eq. 582,* the court of errors and appeals held that in order to procure the cancellation of an accident insurance policy on the ground of misrepresentations made in the application for the policy, it must appear that the misrepresentations were "fraudulent in purpose."

Now, for the facts: On May 11th, 1929, Dr. Marshak called at Laden's home to treat a member of his family. Laden took advantage of the doctor's presence in the house to consult him about a cough which had been troubling Laden. On May 20th and again on June 25th, July 31st and September 19th, 1929, Laden called at the doctor's office in respect to the cough. The doctor diagnosed the trouble as asthmatic bronchitis, but he never told Laden of his diagnosis. The doctor testified that he might have told him to stop smoking. It does not appear that he prescribed any medicine or treatment. Laden's death on April 30th, 1931, was caused by a tumor of the media styma (the space between the two lungs), which had probably existed from before the

time when Dr. Marshak first saw Laden and which may have been the cause of the asthmatic condition.

When Laden stated that his health was good, that he had never been sick and that he had never suffered from asthma, bronchitis or tumor, he probably believed that he was speaking the truth. He was up and about his business every day; there is no evidence that he knew the true state of his health. There remains Laden's denial that he had been attended by a physician within five years. In *Brunjes* v. *Metropolitan Life Insurance Co., 83 N. J. Law 296,* Chief-Justice Gummere, discussing an opinion rendered in another case, said: "That it may be assumed from the use of the word 'attended' that the physician visited the patient at the latter's home." Laden may well have had the same understanding of the meaning of this word. Furthermore, the application blank required the applicant, in case he had been attended by a physician, to state "how long sick." This might indicate that the question related only to attendance by a physician during sickness. The supreme court in *Metropolitan Life Insurance Co.* v. *McTague, 49 N. J. Law 587,* held that evidence that the applicant had suffered from "a cold" did not prove the falsity of his representation that he had not been "sick or afflicted with any disease." There is no evidence that Laden was sick at the times he consulted Dr. Marshak or at any other time prior to his last illness. Laden's statements were made in answer to questions printed on an application blank prepared by the company. Any ambiguity in the questions must be resolved against the company in determining whether the answers are false. *Prahm* v. *Prudential Insurance Co., 97 N. J. Law 206.* In most jurisdictions, the rule prevails "that medical consultation or attendance for merely slight or temporary indisposition need not be disclosed, insured being entitled to a liberal construction of the language of the application." *37 C. J. 464.*

I would also note that the medical examiner observed the condition which caused Laden to consult Dr. Marshak. He reported to the company that physical examination and inquiry showed impairment of the respiratory system, namely,

"sounds louder over upper bronchial tubes—slight throat cough once in a while—wheezing due to smoking," and he gave as a reason why the applicant was not a first-class risk, "excessive smoker." On this report, defendant was unwilling to issue the policy without further investigation. Accordingly, it had another physician examine the applicant and thereafter the policy was issued.

Defendant company has not proved that the statements on which it relies were false and fraudulent. The counter-claim will be dismissed and a decree advised for complainant on her bill.