112 N.J. Super. 265 (1970)
270 A.2d 759
ELIZABETH RUSS, PLAINTIFF,
v.
METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 9, 1970.
*266 Mr. Sol D. Kapelsohn for plaintiff (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. John L. McGoldrick for defendant (Mr. Eugene N. Haring, of counsel, Messrs. McCarter & English, attorneys).
ACKERMAN, J.S.C.
This matter is before the court on plaintiff's motion for judgment. It raises the question whether a life insurance policy may still be declared invalid after the death of the insured on the ground of equitable fraud and, in particular, it involves consideration of the scope and effect of the recent decision of the Supreme *267 Court in Johnson v. Metropolitan Life Insurance Company, 53 N.J. 423 (1969), with respect to that point.

I
Plaintiff, Elizabeth Russ, is the beneficiary of an insurance policy issued by defendant on March 1, 1968 on the life of her son George C. Russ, Jr. The insured died at the age of 36 on September 25, 1968, approximately seven months after the issuance of the policy. Defendant declined to pay and this suit was instituted to collect death benefits under the policy in the amount of $4,000.
Defendant filed an answer denying liability and also a counterclaim praying that the complaint be dismissed and that the policy be declared void and rescinded because it was obtained by fraud. The counterclaim is based upon alleged false answers given by the insured to certain questions in the application for insurance dated February 10, 1968. The portion of the application which relates to the insured's past and present condition of health and his medical history consisted of five questions, numbered 15 through 19. It is alleged that all but one of these questions were answered falsely either in whole or in part.
Question 15 is the first of the questions in the medical sequence:
15. In past 5 years, have any physicians or other practitioners examined, advised, or treated you? No.
It is alleged that the said answer was false in fact in that the insured "was examined, advised, and treated by physicians at the Essex County Overbrook Hospital, Cedar Grove, New Jersey, from June 23, 1962 until August 4, 1962, and on a second occasion, from August 14, 1967 to October 6, 1967."
Question 16, which calls for information as to treatment, etc., for specific diseases or conditions, is alleged to have been falsely answered as follows:
*268 16. Have you ever received treatment, attention or advice from any physician or other practitioner for, or been told by any physician or other practitioner that you had:
(d) epilepsy, paralysis, dizziness, or any mental disorder? No.
It is alleged that the answer was false in fact because the insured "had physical defects and impairments of health including chronic brain syndrome associated with alcoholism and psychotic reaction for which [he] was hospitalized at the Essex County Overbrook Hospital, Cedar Grove, New Jersey, from June 23, 1962 until August 4, 1962 and for which Mellaril, Noludra, and Paraldehyde were administered", and that he "had physical defects and impairments of health including schizophrenic reaction, catatonic type, acute brain syndrome, and alcohol intoxication with psychotic reaction for which he was admitted and treated at the Essex County Overbrook Hospital, Cedar Grove, New Jersey, during the period August 14, 1967 to October 6, 1967 because of heavy drinking since 1959, withdrawal, and the stuporous loss of contact with reality. While so hospitalized, the said George C. Russ, Jr., demonstrated an episode of catatonia and was placed on various tranquilizers, including Thorazine and Noludar."
Question 18 consisted of two parts and it is alleged that both were falsely answered. Question 18(a) and the answer thereto are as follows:
18 (a) Have you any physical defect, or have you been aware of any impairments of health not revealed above? No.
It is alleged that said answer was false in fact for the same reasons that the answer to question question 16 was false.
Question 18(b) and the answer thereto are:
18 (b) In the past 6 months, have you taken any prescribed medication or have you been advised to restrict your diet or living habits? No.
(If yes, state details below, who recommended, and give reason). *269 It is alleged that the answer to this question was false in fact in that the insured "had taken the prescribed medicines, Thorazine and Noludar and various tranquilizers during his hospitalization at the Essex County Overbrook Hospital from August 14, 1967 to October 6, 1967 for heavy drinking, withdrawal from reality, and catatonic stupor, and during which he received a diagnosis of schizophrenic reaction, catatonic type, acute brain syndrome, and alcohol intoxication with psychotic reaction."
The last question alleged to have been falsely answered is as follows:
19. For any `YES' answer to questions 15-18 identify question and give full details. * * *
The application form provides space for details with columns headed "question," "disorder, symptoms or other reasons for consultation," "dates and duration," "treatment received or recommended," and "name and address of each physician or other practitioner and each hospital." The space for answers to this question was left blank by the insured.
Defendant claims that this answer was false in fact for the same reasons that the answers to questions 15, 16, 18(a) and 18(b) were false.
The counterclaim further alleges that the answers were material to the risk and were relied upon by defendant in the issuance of the policy; that defendant had elected to rescind the policy and had tendered to plaintiff the sum of $42.84 representing the premiums received on the policy, and that the tender had been refused.
It was specifically alleged in the counterclaim that equitable fraud rather than legal fraud was charged. Paragraph 21 thereof states:
21. The defendant does not allege in this Counterclaim that the aforesaid misrepresentations were made knowingly or with intent to deceive, but the defendant does allege that they were false in fact *270 and material to the risk. The defendant further says that in view of the rules of law and evidence governing the defense of actions at law, it has no adequate relief save but by resort to the equitable power of this Court.
In her answer to the counterclaim for rescission, plaintiff generally pleaded lack of knowledge or information sufficient to form a belief as to the allegations with respect to the answers in the application and the falsity thereof. But she denied defendant's allegations that the said answers were material to the risk and relied upon by defendant in issuing the policy. And in answer to paragraph 21 of the counterclaim she alleged that "if false statements were made by George C. Russ, Jr. they were not knowingly made, nor were they made with intent to deceive."
Thereafter plaintiff filed the motion now before the court. It prays for "summary judgment" on the ground that there exists no genuine issue as to any material fact and that she is entitled to judgment as a matter of law. No affidavits of any kind were filed by the parties, however, and it is obvious that they conceive the motion to be one simply to test whether the counterclaim for recission based upon equitable fraud states a claim upon which relief can be granted. For the purpose of the motion plaintiff concedes the truth of the allegations of the counterclaim. Taking defendant's concession that it "alleges" only equitable fraud, it is plaintiff's contention that the decision of the Supreme Court in the Johnson case has changed the law and that, overruling a long line of cases to the contrary, it is dispositive authority that a life insurance policy can no longer be rescinded for equitable fraud after the insured has died.
There is no doubt that the issue is squarely presented here as to whether equitable fraud, as distinguished from legal fraud, will afford a basis for rescission. Some of the questions in the application alleged to have been falsely answered are subjective questions and some are objective. As to subjective questions, such as questions 16 and 18(a), it is now well settled that in order to establish even equitable *271 fraud, defendant must prove not only that the insured actually had a mental disorder or other physical defect or impairment of health but also that he knew that he had it. In other words, such questions are construed as seeking to probe the insured's state of mind, and if a negative answer is a correct statement of his knowledge and belief, it is not a misrepresentation at all  it is neither legal nor equitable fraud. See Johnson, supra; Shapiro v. Metropolitan Life Insurance Co., 114 N.J. Eq. 378 (E. & A. 1933); Colonial Life Ins. Co. of America v. Mazur, 25 N.J. Super. 254, 260 (Ch. Div. 1953); Ettelson v. Metropolitan Life Insurance Co., 164 F.2d 660 (3 Cir.1947). However, if the answer is not a correct statement of his state of mind, the answer is probably legal fraud as well as equitable fraud. In such case the answer would be a willful untruth and, although arguably there might still be lacking the intent to deceive which is an essential ingredient of legal fraud, it would certainly be a "knowing" misrepresentation. See Duff v. Prudential Ins. Co., 90 N.J.L. 646, 648 (E. & A. 1917).
The language used by defendant in paragraph 21 of the counterclaim is the classic form of allegation for asserting equitable fraud which has been employed in pleadings over the years. Cf. 3 N.J. Practice, (Marsh and Fischler), Practice Forms (rev. ed. 1960), § 289, at 151. Although it states that defendant does not allege that the misrepresentations were made "knowingly" and therefore might be said to omit a necessary element to charge equitable fraud with respect to the answers to subjective questions, I have assumed, for the purpose of this motion, that it suffices in its present form, or would be deemed to be amended, to charge equitable fraud to the fullest possible extent with respect to the answers to both subjective and objective questions. The existing allegations are clearly sufficient to charge equitable fraud with respect to the answers to questions 15 and 18(b), which are objective questions and called for fact answers. Locicero v. John Hancock Mutual Life Ins. Co., 32 N.J. Super. 300 (App. Div. 1954).
*272 We therefore have equitable fraud charged as to the answers to both subjective and objective questions and the issue is directly raised as to whether equitable fraud, as distinguished from legal fraud, will still warrant rescission or whether the insurer must prove intent to deceive.

II
We now turn to the Johnson case. Does it have the effect which plaintiff claims that it does? After careful consideration, I am of the opinion that it does not and that her motion must be denied.
The Johnson case did not involve a life insurance policy. It involved a suit by an insured on a health and accident policy to collect for total disability, resulting from a disease of the brain, which was alleged to have commenced approximately one year and eight months after the policy was issued. The policy was issued in accordance with the statutes prescribing the policy provisions required in health and accident policies, N.J.S.A. 17:38-13.1 et seq., and not those prescribing the provisions required in life insurance policies, N.J.S.A. 17:34-15 et seq. The insurance company defended the suit on the ground that the insured had been guilty of equitable fraud, in that false answers had been given by him to two questions in the application for the policy. The gist of the fraud charged was that the insured had falsely answered "no" to the question whether he had ever been treated for or told that he had heart disease, and that he did not give details, including names of physicians, with respect to treatment or consultations for that condition. The cause of the insured's disability was not related to any heart condition which the insured allegedly concealed.
The case was tried before a jury on the theory of equitable fraud, with special interrogatories given to the jury, which found that the insured did not in fact have a heart disease. Judgment was entered in plaintiff's favor. The Appellate *273 Division reversed on the ground that there was equitable fraud material to the risk, regardless of the existence of heart disease, in the failure of the insured to disclose his treatments by physicians. Johnson v. Metropolitan Life Ins. Co., 99 N.J. Super. 463 (1968). The Supreme Court reversed and reinstated the judgment in favor of plaintiff on several grounds.
The first ground was that there was in fact no equitable fraud, or fraud of any kind, committed by the insured in his answers to the application. The court interpreted the question as to whether the insured had been treated for or told that he had heart disease as a subjective one which required that there be proof not only that he had the disease but knew it, and it held that the jury's verdict that he did not have the disease was amply supported by the evidence and was dispositive of the point. It interpreted the question with respect to providing details as to treatment by physicians as not to require such data where the advice given by the doctors was that there was no disease or condition or where the treatment was merely for a passing indisposition. The Supreme Court therefore held that on the facts there was no equitable fraud.
The second ground for decision, and the one directly involved here, was predicated upon the Supreme Court's interpretation and construction of the contestability provisions of the statutes relating to health and accident policies and of the policy clause based thereon which was actually contained in the policy in suit.
Before considering what the Supreme Court held in Johnson with respect to the statutes there involved, it is pertinent to note that by virtue of paragraph (c.) of N.J.S.A. 17:34-15, which provides mandatory standard provisions for life insurance policies, all life policies must contain an "incontestable" clause as follows:
c. That the policy shall constitute the entire contract between the parties and that after it has been in force during the lifetime of the insured a specified time not later than two years from its date, shall *274 be incontestable, except for nonpayment of premiums and for violation of its express conditions, if any, relating to hazardous travel, residence or occupation, in which case the liability of the company may be limited to a definitely determinable reduced amount, which shall not be less than the full reserve for the policy and any dividend additions, and except also, at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability, and provisions which grant additional insurance specifically against death by accident.
It is clear that this statute, by exclusion, provides that the ordinary life policy cannot be rescinded after two years for fraud in the application therefor, whether it be legal fraud or equitable fraud, and that no defense based upon fraud may be asserted to defeat a claim on the policy after the contestable period has expired. It is also clear, as conceded in Johnson, that it has been held for many years that, within the period provided in the two-year incontestability clause, life policies may be rescinded and defenses asserted based upon equitable fraud as well as legal fraud, even after the death of the insured. Among the many cases in point so holding are Metropolitan Life Insurance Co. v. Lodzinski, 124 N.J. Eq. 357 (E. & A. 1938); Metropolitan Life Insurance Co. v. Tarnowski, 130 N.J. Eq. 1 (E. & A. 1941); Metropolitan Life Insurance Co. v. Chambers, 142 N.J. Eq. 440 (Ch. 1948); Ettelson v. Metropolitan Life Insurance Co., supra; Colonial Life Ins. Co. of America v. Mazur, supra; Locicero v. John Hancock Mutual Life Ins. Co., supra; Gallagher v. New England Mutual Life Insurance Co. of Boston, 19 N.J. 14 (1955); Equitable Life Assurance Society of the United States v. New Horizons, Inc., 28 N.J. 307 (1958), and Parker Precision Products Co. v. Metropolitan Life Insurance Co., 407 F.2d 1070 (3 Cir.1969), and other cases cited therein. And see Hoagland v. Supreme Council, Royal Arcanium, 70 N.J. Eq. 607 (Ch. 1905).
The main provision construed by the Supreme Court in Johnson is N.J.S.A. 17:38-13.2(A), which requires that health and accident policies contain:
*275 (2) A provision as follows:
Time limit on certain defenses: (a) After three years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three-year period.
(The foregoing policy provision shall not be so construed as to effect any legal requirement for avoidance of a policy or denial of a claim during such initial three-year period. * * *)[1]
Also considered by the Supreme Court in its decision in Johnson was the provision in N.J.S.A. 17:38-13.4 relating to applications for health and accident policies, which provides in part:
(C) The falsity of any statement in the application for any policy covered by this act may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.
The provision in the policy involved in the Johnson case contained a two-year limitation rather than the longer three-year period which the statute would permit, but, except for that, the provision contained the language required by the "time limit on certain defenses" provision of N.J.S.A. 17:38-13.2(A) quoted above. The insurer's attempt to rescind for equitable fraud came after expiration of the two-year period.
It was during the course of its opinion dealing with the construction of the contestability provision that the Supreme *276 Court made the statements (Johnson v. Metropolitan Life Ins. Co., 53 N.J. 423 at 436-438) which plaintiff relies upon as holding that equitable fraud no longer provides the basis for rescission of life policies after the insured has died and that prior decisions holding to the contrary have been discredited and overruled.
In this regard Chief Justice Weintraub, writing for a unanimous court, started with the premise that the statute was "drawn on the hypothesis that in its absence an insurer could rescind a policy for an innocent misrepresentation of a material fact. Our cases so held, even after the insured loss had occurred" (53 N.J. at 436). Thereafter followed statements critical of such cases. The court said:
* * * Most of them related to life insurance as to which the rule persisted despite a statutory enactment that "all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties." N.J.S.A. 17:34-15d. That statute was construed to require in actions at law, not only a material misrepresentation, but also an intent to deceive, Urback v. Metropolitan Life Ins. Co., supra, 130 N.J.L. [210] at 211-212, but, curiously, that interpretation of the statute somehow was not accepted as a binding statement of legislative policy in the Court of Chancery, which continued to relieve an insurer for a material misrepresentation innocently made. Equitable Life Assurance Society of United States v. New Horizons, Inc., supra, 28 N.J. [307] at 314. One Vice Chancellor understandably thought the statute should mean the same thing in a court of equity and hence to require proof of a fraudulent intent, Shapiro v. Metropolitan Life Ins. Co., 110 N.J. Eq. 287, 289 (Ch. 1932), but the Court of Errors and Appeals affirmed his judgment without commenting upon that proposition. Instead it found the claimant there should prevail on the ground that questions relating to diseases or state of health were addressed also to the insured's knowledge and belief, 114 N.J. Eq. 378, 381 (E. & A. 1933), a concept which antedated that decision and served to ameliorate the rule permitting an insurer to undo the contract for an honest material misrepresentation. [53 N.J. at 436-437]
The court then made the following observations as to the nature of equitable fraud and the fairness of applying that doctrine in favor of an insurer after loss had occurred:
*277 Equitable fraud is obscured by its label. Fraud connotes an intent to do wrong. When one misrepresents innocently, there is no such intent. Still it may be wrong to insist upon an advantage thus obtained, and when that is so, a refusal to undo the transaction could be characterized as "fraudulent." Du Bois v. Nugent, 69 N.J. Eq. 145, 151 (Ch. 1905); 3 Pomeroy, Equity Jurisprudence (5th ed 1941), § 888, pp. 492-495. But if the status quo cannot be restored, a new element is added, for the question then is which of two innocent parties should bear a loss that has intervened. So with respect to an insurance risk, the return of the premium would hardly restore the insured to his prior situation. The issue is not solved by denouncing the insured in terms of fraud. Insurance companies do invite business, and when they offer to take a risk upon the applicant's representations rather than upon their own medical examination and investigation, they know that an honest response to the questions they phrase is all they can expect. Thus "equitable fraud" is a debatable doctrine after the loss. So it is aptly said in 5 Williston, Contracts (Rev. ed. Williston and Thompson 1937), § 1500, pp. 4191-4192, that "It is to be remembered also that rescission presupposes a restoration of the status quo, and this may be impossible, for example, where after the death of one whose life was insured, the insurer discovers innocent misrepresentations made by the insured in procuring the policy." Under 2 Restatement, Contracts (1932), § 486, comment a, illustration 1, rescission would be denied after loss unless there was an intent to deceive. Cf. Merchants Indemnity Corp. v. Eggleston, supra, 37 N.J. [114], at 124; but see N.Y. Life Insurance Co. v. Weiss, 133 N.J. Eq. 375, 379 (1943). [53 N.J. at 437, 438]
The court then stated that "[w]ith this background we approach the issues of statutory construction." (53 N.J. at 438).
The crucial issue was the meaning of the words, "After three years * * * no misstatements, except fraudulent misstatements, * * * shall be used to void the policy * * *" as used in N.J.S.A. 17:38-13.2(A). The insurer argued that the words "fraudulent misstatements" were broad enough to include both legal fraud and equitable fraud and that the policy therefore remained rescindable after the expiration of the three-year statutory period (two years, under the policy provision) for both kinds of fraud. The court held that this would accomplish nothing for the insured and stated that it was unmistakable that the purpose of the provision was to improve the position of the insured. The insurer argued in the alternative that the words would accomplish *278 something by foreclosing the right to rescind for "immaterial" misstatements, but the court pointed out that this was already foreclosed by the provision of N.J.S.A. 17:38-13.4(C), quoted above, that a false statement in an application for a health and accident policy will not bar recovery unless it "materially affected either the acceptance of the risk or the hazard assumed by the insurer." The court therefore concluded that the words "except fraudulent misstatements," in order to have significance, meant fraudulent misstatements in the sense of legal fraud, made with intent to deceive, as distinguished from equitable fraud.
The net result was that the Supreme Court held in Johnson that the proper construction of the mandatory contestable provision for inclusion in health and accident policies is that for the contestable period of three years (one year longer than the contestable period for life insurance policies), such policy may be voided for legal fraud or equitable fraud, but that after the expiration of the three-year period, such policy may be voided only for legal fraud. The court stated:
Thus the statute, as we interpret it, boils down to the proposition that after two years the policy may not be voided for a misstatement in the application unless the misstatement is "fraudulent" as we have defined the word, * * *.

* * * * * * * *
* * * As we have said, the insurer has really lost little or none of what in justice it ought to have when it is permitted to void the policy at any time at all upon proof of fraudulent misstatements.

* * * * * * * *
Here the pleading challenging the validity of the contract was filed well beyond the time limit. The insurer could not rely upon equitable fraud. Under this statute, it remained free to assert the misstatements were made with an intent to deceive. As we have said, it did not defend on that basis. [53 N.J. at 441-443; emphasis supplied]
It is therefore apparent that, despite the remarks referred to above, the Supreme Court in Johnson nevertheless construed the statute before it as authorizing and sanctioning rescission of health and accident policies for equitable fraud *279 during the three-year initial contestable period. Far from "overruling" the doctrine of equitable fraud or forbidding its application in rescission cases after loss has occurred, it did just the opposite. In the circumstances, the decision obviously cannot be deemed to have overruled the long line of cases holding that equitable fraud may be asserted during the two-year contestability period to void a life insurance policy even though the insured has died.
It is true that the underlying basis for the holding in Johnson, in continuing the viability of equitable fraud to the extent that it did there with respect to health and accident policies, appears to be that the court felt that the Legislature, by the terms of the statute which it enacted with reference to such policies, recognized the doctrine of equitable fraud and in essence expressly provided that equitable fraud should be a basis for rescission during the initial contestable period. Plaintiff here argues that, although the court was bound to enforce the legislative will in Johnson, the remarks in its opinion indicate that, where the court is free to act, it will refuse to apply equitable fraud after loss has occurred, and that, specifically in life insurance policy cases which involve different statutory provisions, it will no longer permit rescission for equitable fraud after death of the insured.
For several reasons this argument is not persuasive and cannot help plaintiff before this court. In the first place, the remarks of the Supreme Court in Johnson were expressly stated to have been by way of background to the specific problem before it of construing the statute there involved. The court stated that equitable fraud is a "debatable doctrine" after loss has occurred, but it is clear that it did not there undertake to fully resolve and decide the "debate." It was speaking in a case involving health and accident policies. There are many arguments pro and con which can be addressed to it in connection with the determination of the continued applicability of equitable fraud in life insurance policy cases, and it may well be that *280 after full review it will reaffirm the existing authorities which permit rescission of such policies for equitable fraud. It is strongly urged by defendant that the decision in Johnson supports such reaffirmation and that the court, following the pattern of its decision in Johnson, will conclude that existing legislative provisions, either because of the express terms thereof or because of legislative inaction and acquiescence after long-standing judicial construction thereof, contain the legislative pronouncement that equitable fraud is a basis for rescission in life insurance policy cases and that the same is binding upon the court, just as it was in Johnson.
In this connection, wholly apart from arguments which may be based upon other statutes relating to life insurance policies generally, it is contended that the express reference in the life insurance incontestability clause (N.J.S.A. 17:34-15(c)) to exceptions for optional provisions with respect to the contestability of disability and accident clauses has the effect, by permitting the carry-over of the contestable provisions involved and construed in Johnson, of indicating the legislative will that the same rule applies to life policies and to health and accident policies, and that equitable fraud may therefore be relied upon for rescission of life insurance policies during the contestable period. It is also contended that the same conclusion is to be drawn from the fact that by L. 1968, c. 319, comprising N.J.S.A. 17:35B-1 through 14, certain provisions were enacted which apply in common to life insurance policies and to health and accident policies and that, by virtue of N.J.S.A. 17:35B-14, the provisions of N.J.S.A. 17:38-13.4(c), quoted above, which had application only to health and accident policies, were repealed and an identical provision, N.J.S.A. 17:35B-3(d), applicable not only to health and accident policies but also, for the first time, to life insurance policies, was enacted providing that the "falsity of any statement in the application for any policy covered by this act may not bar the right to recovery thereunder *281 unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." (Emphasis supplied). It is also urged that other legislative provisions with respect to contestability in other types of insurance may have some bearing in determining, as was held in Johnson with respect to health and accident policies, that the Legislature intended and provided that life insurance policies may be voided for equitable fraud during the contestable period. See N.J.S.A. 17:34-32(2) and (3); N.J.S.A. 17:35-13; N.J.S.A. 17:44A-20; N J.S.A. 17:44A-21(i) and (1); N.J.S.A. 17:45-5(i) and (j); N.J.S.A. 17:35B-1(d).
Both parties base arguments on the provisions of N.J.S.A. 17:34-15(d), which provides that life insurance policies shall contain a provision that" the policy shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any * * * application * * * unless * * * attached to the policy when issued, and all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Plaintiff argues that the interpretation of this statute in the law courts, as pointed out in Johnson, is that the statute requires proof of legal fraud and shows that the Legislature did not intend that equitable fraud be applied in life insurance policy rescission cases. Deefndant counters that by virtue of the long line of cases actually allowing rescission for equitable fraud the contrary is true. Moreover, although it is conceded that the criticism in Johnson is sound and there has been apparent inconsistency in the applications of the statute in the law courts and the equity courts, defendant strongly contends that the fault lies with the "interpretation" of the statute given in the law courts, and that the statute was never intended to affect in any way the question whether legal fraud or equitable fraud should be required for rescission. It is claimed that this can readily be demonstrated to the high court, which, so far as can be gleaned from reported opinions, has never *282 really passed upon the point, and that the cloud upon the doctrine of equitable fraud in this regard is not warranted. It is claimed that the statute has in fact been properly applied both at law and in equity, since both courts have, subsequent to the enactment of the statute, allowed rescission only for material misstatements contained in applications for life policies.[2]
It is also contended by defendant that, even if Johnson is to be construed as adopting the rule of Williston, Contracts, § 1500, and Restatement, Contracts § 486, that there *283 can be no rescission for innocent misrepresentations after the death of the insured in life insurance policy cases because there can be no restoration to the status quo, it is apparent that the court in Johnson did not undertake to make a definitive pronouncement in that regard which would be applicable in all cases. Defendant points out that full and perfect restoration to the status quo is not always required. See 12 Williston, Contracts (3d ed. Jaeger, 1970) §§ 1529-1530, and see §§ 1508-1513, 1525. It is contended that, if the insured was in fact uninsurable before the issuance of the policy sought to be rescinded, there is no problem with return to status quo even under the Restatement rule as fairly interpreted. It cites the recent decision in Equitable Life Assur. Soc. of United States v. New Horizons, Inc., 28 N.J. 307 (1958). There rescission for equitable *284 fraud of a "key-man" life insurance policy was granted after death of the insured, and the court said:
Defendant attempts to emphasize the equities of its position by pointing out that an adverse decision will deprive it of insurance protection upon which it had relied and that such deprivation will be effected despite the absence of any wrongdoing on its part. The answer to this is twofold. First, the terms and intention of the insurance contract may not be flouted. Second, defendant was not entitled to any protection since Yafchak was uninsurable * * * [28 N.J. at 316; Emphasis supplied.]
It is therefore apparent that the soundness of plaintiff's contentions as to the scope and effect of the decision in Johnson is, at the very least, open to some question, and this leads to the second reason for the rejection of her arguments. In the circumstances, they are not properly addressed to this court. As a trial judge I am bound to follow *285 the direct rulings of our highest court, acknowledged in Johnson to exist, until these decisions have clearly been overruled. It is not my function or prerogative to ignore existing precedents even if I were to believe that the Supreme Court would repudiate them. The arguments for reversal are properly presented to that court. See Franco v. Davis, 51 N.J. 237, 238 (1968); Mannillo v. Gorski, 100 N.J. Super. 140 (Ch. Div. 1968) remanded for trial, 54 N.J. 378 (1969); In re Arens, 72 N.J. Super. 310 (Cty. Ct. 1962), rev. on other grounds 41 N.J. 364 (1964); Fox v. Board of Education, West Milford Tp., 93 N.J. Super. 544 (Law Div. 1967). Since the Supreme Court is the final arbiter, the intent to alter settled law of the State cannot be attributed to it in the absence of express, clear disapproval of existing law and a definite repudiation of decisions establishing that law. Cohen v. Cohen, 121 N.J. Eq. 299 (Ch. 1936); see Furr v. Metropolitan Life Ins. Co., 111 N.J. Super. 596 (Law Div. 1970). There is no such clear disapproval or repudiation in Johnson.
It is therefore concluded that rescission of a life insurance policy may still be granted during the contestable period for equitable fraud and that defendant's counterclaim states a claim upon which relief can be granted. Plaintiff's motion is denied.
NOTES
[1] The same section of the statute contains a further provision, not directly material here, that with respect to certain policies, as defined therein, the said policies may contain, "in lieu of the foregoing," an "incontestable" clause as follows:

After this policy has been in force for a period of three years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.
See Lindsay v. United States Life Ins. Co., 80 N.J. Super. 465 (Law Div. 1963), holding that such clause, similar to the life insurance policy incontestable clause, bars rescission for any kind of fraud in the application after expiration of the period of contestability.
[2] Defendant's arguments may be summarized as follows: N.J. S.A. 17:34-15 (d) was originally enacted by L. 1907, c. 72, and was taken from a 1906 New York statute. It is contended that the clear purpose of the statute, which for the first time required that applications be attached to policies if they were to be part of the contract, was to avoid the existing rule that statements in the contract were warranties and that policies could be avoided at law for immaterial untrue statements in warranties even though there was no fraud. See Metropolitan Life Ins. Co. v. McTague, 49 N.J.L. 587 (Sup. Ct. 1887); Fish v. Metropolitan Life Ins. Co., 73 N.J.L. 619 (E. & A. 1905), affirmed 75 N.J.L. 822 (E. & A. 1907). So far as representations were concerned, as distinguished from warranties, it was already well established, both at law and in equity, that there could be rescission for material misrepresentations, but not for immaterial misrepresentations, but it was also settled that relief could be granted for equitable fraud in equity but only for legal fraud in the courts of law. The statute, it is claimed, was designed to make all statements in applications representations rather than warranties to prevent rescission for immaterial false statements but not to affect the quantum of proof of fraud in the two branches of the courts. This, defendant states, was the construction of the statute given in Prudential Insurance Co. of America v. Merritt-Chapman & Scott Corp., 111 N.J. Eq. 166 (Ch. 1932), but for some reason this decision has been overlooked and ignored in subsequent cases, at least in the law courts.

At first there was no problem with the statute in the law courts. See Guarraia v. Metropolitan Life Ins. Co., 90 N.J.L. 682, 683 (E. & A. 1917), where the court said with reference to the statute, "The result of this seems to be that [statements in the application] are made the legal equivalent of representations in any case, and we must look for fraud in order to vitiate the policy." (Emphasis supplied.) See also Duff v. Prudential Ins. Co., supra. However, in Prahm v. Prudential Insurance Co., 97 N.J.L. 206 (March 1922), and Kerpchak v. John Hancock Mutual Life Ins. Co., 97 N.J.L. 196 (June 1922), Justice Trenchard, writing for the Court of Errors and Appeals, stated a test which, though arguably not intended to be a construction that the statute required legal fraud for rescission, was susceptible of that interpretation. In Shapiro v. Metropolitan Life Ins. Co., 110 N.J. Eq. 287 (1932), Vice-Chancellor Bigelow took this statement to be a construction of the statute by the highest court, binding both in law and equity, but the Court of Errors and Appeals added to the confusion by affirming on other grounds and by "passing" the issue of the insurer's obligation to prove legal fraud. 114 N.J. Eq. 378 (1933). As pointed out in Metropolitan Life Ins. Co. v. Stern, 124 N.J. Eq. 391, 396 (Ch. 1938), there was considerable doubt among members of the bar after Shapiro as to whether equitable fraud was still a ground for rescission of insurance policies in the Court of Chancery, but this doubt was removed by the decision in Metropolitan Life Ins. Co. v. Lodzinski, 124 N.J. Eq. 357 (E. & A. 1938). In spite of the decision in Lodzinski and the subsequent decision in Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1 (E. & A. 1941), affirming the continued viability of equitable fraud, the high court expressly held in Urback v. Metropolitan Life Ins. Co., 130 N.J.L. 210 (E. & A. 1943) that the "settled interpretation" of the statute was that it required legal fraud to avoid an insurance policy at law.
The defendant contends that the true interpretation and meaning of the statute is that which is set forth in Vice-Chancellor Berry's opinion in Prudential Insurance Co. of America v. Merritt-Chapman & Scott Corp. supra, and in Eastern District Piece Dye Works v. Traveler's Ins. Co. 234 N.Y. 441, 138 N.E. 401 (Ct. App. 1923) and Minsker v. John Hancock Mutual Life Ins., Co. 254 N.Y. 333, 173 N.E. 4 (Ct. App. 1930), which held that the statute did not affect the quantum of proof of fraud required. See also Emmerglick, "Cancellation of Life Insurance Policies for Fraud," 3 Mercer Beasley L. Rev. 60, 79-82 (1934). It is claimed that, as Emmerglick pointed out (at 80), the words "in the absence of fraud" in the statute really added nothing to it:
The obvious intent of the legislature was to preserve for the assured's representations their character as such. This was the only object it sought to accomplish by the provision in question. It was not undertaking to define the nature of the fraud for which a policy might be rescinded. The use of the words "in the absence of fraud", must be considered in connection with the purpose of their context. Since that purpose was to retain the distinction between warranties and representations, this phrase cannot be regarded as a legislative definition of fraud. In a recent decision Vice Chancellor Berry pointed this out obiter, and called attention to the fact that the statute was patterned after a New York enactment which had been so construed. It is apparent that the legislature, out of an abundance of caution, endeavored to make it clear that the assured's representations should continue to be such only in the absence of fraud. If that appeared then they would necessarily become misrepresentations.
Defendant points out that in subsequent similar statutes the words "in the absence of fraud" have been omitted by the Legislature. See N.J.S.A. 17:34-32(2) relating to group insurance, N.J.S.A. 17:44A-20 relating to fraternal benefit certificates, and N.J.S.A. 17:45-5(i) applying to mutual benefit associations.