HUBERT D. GALLAGHER, GUARDIAN FOR JANE DEEGAN AND MARY ELIZABETH DEEGAN, PLAINTIFF-APPELLANT, v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY OF BOSTON, DEFENDANT-RESPONDENT.

Argued May 23, 1955—Decided June 20, 1955.

*Mr. Samuel Milberg* argued the cause for the appellant (*Messrs. Milberg & Milberg,* attorneys; *Mr. Henry Milberg* on the brief).

*Mr. Nicholas Conover English* argued the cause for the respondent (*Messrs. McCarter, English & Studer,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Superior Court, Appellate Division, which affirmed a judgment of the Essex County Court, Law Division, granting the defendant-respondent rescission of two life insurance policies. On application we granted certification because there are important questions of law involved which should be settled by this court. *R. R.* 1:10–2(*d*).

The appellant sued to recover the proceeds of two term policies of life insurance aggregating $50,000 issued on the life of the decedent, Deegan, father of the infant plaintiffs. Both policies were issued on November 10, 1949 on the basis of the same application made and signed by the decedent. Part of the application in question, containing the questions and answers as to applicant's health and medical history, was signed by the insured-decedent on October 25, 1949. He died on October 6, 1950. The above action was instituted on December 17, 1951.

The respondent filed an answer disclaiming responsibility and a counterclaim seeking cancellation on the ground of equitable fraud in the misstatement of material facts in the

application for the policies. The appellant's answer to the counterclaim alleged that the defendant had actual knowledge of insured's physical condition prior to the issuance of the policies and therefore could not have been misled; that the defendant before issuing the policies had in its possession a report dated October 20, 1947 (a Medical Information Bureau report) indicating that an electrocardiogram of insured had been taken, and had knowledge of the falsity of two statements in the application; that the insured had the attendance of a physician at the time and that the defendant knew or could by reasonable diligence have learned the true nature of all the alleged misrepresentations; that the defendant was precluded from rescinding the contracts because it did not rely upon the misrepresentations in the application; that the defendant had unduly delayed rescission and was guilty of laches; that it had waived its rights and had elected to affirm the contracts of insurance.

In the application the decedent represented that he had never suffered from indigestion, palpitation of the heart or shortness of breath; that he had never had or been told that he might have had high or low blood pressure; that he had never been in a hospital except for an appendectomy and a broken right radius; that he had never dieted; that he had not consulted a physician within five years and he failed to include any reference to several long confinements at hospitals and the number of times he had been treated at hospitals. Although the application asked for such specific information the only reference to hospital treatment was that mentioned above.

As far back as 1937 the decedent had been treated for gastric distress and this treatment continued until 1942 when he was admitted to the Lahey Clinic in Boston, and the record there indicates rather consistent difficulty with digestion; and as to the palpitation, he complained of this on his first visit to a doctor in 1937 as being of several years' duration, and on June 20, 1945 he told Dr. DeGraff his heart had been irregular since 1929. In 1946 he was admitted to Doctors Hospital in New York and the history

there shows admissions by him that he had palpitation for several years. He had given a similar history to the Lahey Clinic in 1942. Various doctors who treated him testified they tested his blood pressure and it was elevated on each occasion; and there is a persistent history according to their various records of essential hypertension and arteriosclerotic heart disease. The Lahey Clinic records indicate that at the time he was under treatment there he was on a diabetic diet despite his denial of that in the application. As to his denial he ever consulted a physician or practitioner within five years, the record shows that he had seen a Dr. Twiss at least three times, a Dr. DeGraff 25 times, and at the same time he consulted with four or five other doctors, including treatment at the Lahey Clinic in 1947. The appellant admits all these specific representations in the application were in fact false.

We are in accord generally with the reasons stated in the opinion of the Appellate Division affirming the judgment of dismissal by the trial court, and the conclusion that the situation is controlled by the decision in *John Hancock Mutual Life Ins. Co. of Boston, Mass. v. Cronin,* 139 *N. J. Eq.* 392 (*E. & A.* 1947), but for the reasons stated above as to the important questions involved we certified the case.

The appellant argues the Appellate Division failed to correctly apply the rule of *John Hancock Mutual Life Ins. Co. of Boston, Mass. v. Cronin, supra,* because the insurance company, under the facts in this case, is chargeable with (1) knowledge of the falsity of material representations, and (2) information of such a nature as would require further inquiry; and that the rule is that actual knowledge by the insurance company of material facts before the issuance of policies would indisputably preclude rescission. Further, that when the known facts raise, or should raise, in the mind of a reasonable person, an inference that the offered representations of fact may not be true, a duty devolves upon the party to whom the representations are made to make fair investigation, within the range of the justified inference, before he can urge he was defrauded thereby, and that he is

charged with such knowledge as he could or would have obtained had he made such investigation. No holding of the courts of this State has gone that far.

This argument is premised upon a report which the respondent-insurance company had received from the Medical Information Bureau (M. I. B.), which is a clearing house existing among life insurance companies whereby they exchange information alerting them to medical impairments ascertained in connection with either formal or informal applications made for insurance. Whenever a prospective applicant applies either formally or informally for insurance and it develops that a medical impairment is disclosed in the applicant's condition of health, it then transmits in code a report of such medical impairment, also the applicant's name, date of birth and occupation. This report is sent to the Recording and Statistical Corporation, a transmitting agent for the M. I. B., who upon receipt of said reports sends them to all members within 24 hours.

It is not disputed that in 1947 the insured made an informal application for life insurance from the Travelers Insurance Company and the M. I. B. report was sent to the respondent here. This report showed an electrocardiogram had been taken and it indicated a marked left-axis deviation of the heart which the expert medical testimony shows in 70% of the cases indicates a heart pathology and in 30% of the cases merely a positional condition of the diaphragm not indicative of any disease. There was other evidence to show that the application for insurance in the Travelers Insurance Company had been refused.

At the time the application was being processed the respondent also had in its possession a report from its own medical examiner which indicated blood pressure within normal limits, pulse normal and no evidence of present or past disease of the blood vessels or heart. It was a routine examination and did not include an electrocardiogram, an x-ray or a fluoroscope. It also had a report which it had asked for from the Retail Credit Company which stated under the "Health Family History": "The applicant is a

man of average proportions, normal and healthy in his appearance and we do not learn that he has ever had serious illnesses or operations." There is no question, however, that this latter investigation was negligently carried on, and some of the stated financial information was also highly inaccurate, although such was not known to the respondent at the time. All of this data before the respondent contained affirmative statements by the decedent of good health, and the medical examiners' report and the credit report were consistent with the representations made in the application which was subsequently shown to be totally false in fact.

■ On the basis of what it had before it the respondent issued the policies in question. It is not disputed by the appellant that a life insurance policy will be rescinded in equity on the ground of innocent material misrepresentations. *Metropolitan Life Ins. Co. v. Lodzinski,* 124 *N. J. Eq.* 357 (*E. & A.* 1938); *Metropolitan Life Ins. Co. v. Tarnowski,* 130 *N. J. Eq.* 1 (*E. & A.* 1941); *Metropolitan Life Ins. Co. v. Somers,* 137 *N. J. Eq.* 419 (*Ch.* 1946); *Metropolitan Life Ins. Co. v. Chambers,* 142 *N. J. Eq.* 440 (*Ch.* 1948); *Locicero v. John Hancock Mutual Life Ins. Co.,* 32 *N. J. Super.* 300 (*App. Div.* 1954). And a court of equity will likewise rescind policies where the false representation is a deliberate misstatement. *United Life & Accident Ins. Co. v. Winnick,* 113 *N. J. Eq.* 288 (*Ch.* 1933).

■ Contracts of insurance are contracts of utmost good faith. *Brownlie v. Campbell,* 5 *App. Cases* 925 (*House of Lords* 1880); *Brunjes v. Metropolitan Life Ins. Co.,* 91 *N. J. L.* 296 (*E. & A.* 1917); *Stipcich v. Metropolitan Life Ins. Co.,* 277 *U. S.* 311, 48 *S. Ct.* 512, 72 *L. Ed.* 895 (1928); *Atlantic Casualty Ins. Co. v. Interstate Ins. Co.,* 28 *N. J. Super.* 81 (*App. Div.* 1953). Good faith requires the applicant to fully disclose all facts relating to his general health. *Metropolitan Life Ins. Co. v. Somers, supra; Metropolitan Life Ins. Co. v. Macaulay,* 142 *N. J. Eq.* 296, 297 (*Ch.* 1948).

■ The prior medical history of an applicant is naturally and logically a most material matter to a life insurance com-

pany which has been asked to underwrite a death risk, and the working rule is that inquiries propounded in the application form, and the truthfulness and completeness of answers thereto touching the physical condition and pathological history of the applicant, are material to the risk as a matter of law and such materiality is not the subject of a finding of fact by a jury. *Duff v. Prudential Ins. Co.*, 90 *N. J. L.* 646 (*E. & A.* 1917); *Kerpchak v. John Hancock Mutual, etc., Co.*, 97 *N. J. L.* 196 (*E. & A.* 1922); *Urback v. Metropolitan Life Ins. Co.*, 127 *N. J. L.* 585 (*E. & A.* 1942); *Locicero v. John Hancock, etc., Co., supra.*

■ The question here presented is not so much whether the information which was actually before the respondent at the time the insurance was issued, was not consistent with the issuance of a policy, but rather whether the two instances where it contradicted statements made in the application were sufficient to charge the respondent with the duty of making a complete inquiry as to each and every statement made in the application. The trial court and the Appellate Division found to the contrary, and in that we concur.

In *John Hancock Mutual Life Ins. Co. of Boston, Mass. v. Cronin, supra,* the Court of Errors and Appeals held that if it is factually established that the insurer did not rely upon the misrepresentations made, even though they were material, the company is not entitled to relief. If, on the contrary, the policy of life insurance was issued on the written application and the company relied upon the statements made therein in respect to the physical condition and attendance upon the applicant by physicians, it cannot successfully be contended that the insurance company was not thereby induced to issue its contract of insurance. In answer to the respondent's contention that the insurer having made an investigation became "chargeable with knowledge of any and all facts which were in existence," Mr. Justice Wachenfeld, speaking for the court, 139 *N. J. Eq.,* at *page* 398, said:

"This rule is too broad. It is only where the independent investigation discloses the falsity of the material representations or the

source of the information is revealed by the insured where the parties are not in an equal position to know the facts, and in either event the knowledge gained or which could have been gained by the exercise of reasonable diligence is substituted for the insurance application, that the appellant is precluded from relying upon the misrepresentations in the application. *The mere fact that an insurer makes an investigation does not absolve the applicant from speaking the truth nor lessen the right of the insurer to rely upon his statements, unless the investigation discloses facts sufficient to expose the falsity of the representations of the applicant or which are of such a nature as to place upon the insurer the duty of further inquiry.* \* \* \* The independent investigation voluntarily undertaken by appellant did not disclose any facts from which the company knew or could by reasonable diligence have known of the true nature of the misrepresentations." (Italics supplied)

The application of the above rules in a given situation is subject to the paramount duty of the insured to fully disclose all facts relating to his general health in the application when such information is requested. It is he and he alone who has the necessary complete knowledge of such facts, and his statements and answers in the application are the determinant qualitative factor in the equation of insurability which the insurer has to resolve before issuing a policy. It is only when the independent investigation of the company discloses sufficient facts to seriously impair the value of this determinant factor that a further duty rests upon the insurer to investigate the statements and admissions in the application.

For these reasons we do not agree with the contention made by the respondent-carrier that the true rule is that where an insurance company is in possession of information which, if followed up, would disclose the true facts concerning the insured's health and medical history, it is, nevertheless, under no duty to make such further inquiry if the information which the company has is complete on its face and is not incompatible with insurability.

The inherent danger in the rule suggested by the insurer is that it would place in the insurer the absolute right to determine the fact whether the information was complete on

its face, and it is this factor which is the controlling equity in an action for rescission.

In the particular facts before us the decedent's lack of good faith in preparing this application is so gross as to preclude him from any consideration by a court of equity occasioned by the alleged neglect of the insurer to discover the misrepresentations. His answers both in the application and to the persons making the retail credit report showed a studied campaign or scheme to deceive and to defraud, but since the representations in the application and the answers in the credit investigation are consistent with what was found in the medical examiner's report it cannot be said that the heart deviation shown by the M. I. B. report seriously impaired the value to be given them on the question of insurability. This being so there was no further duty upon the insurer to investigate.

The appellant raises several additional points which were not raised in this petition of certification; therefore, under the rule they are not available on this appeal. *State v. LeFante*, 14 *N. J.* 584, 589 (1954); *State v. O'Shea*, 16 *N. J.* 1, 7 (1954). However, we have examined these points and found them without merit.

Appellant contends that the respondent is bound by the errors in fact in the report of the Retail Credit Company. It is clear that the relationship of principal and agent did not exist and that in fact the Retail Credit Company was an independent contractor which sold its services to its customers.

Appellant next contends that the respondent is guilty of laches in filing its counterclaim for rescission. As the Appellate Division found, some of the time between the death of the insured and the institution of suit was consumed by settlement negotiations, and this is the fact. In a court of equity, however, the rule of laches is never applied in favor of the perpetrator of a carefully designed and studied scheme of fraud such as is evidenced by the proofs in this case. *Bookman v. R. J. Reynolds Tobacco Co.*, 138 *N. J. Eq.* 312, 406 (*Ch.* 1946).

As to the final point that certain evidence was excluded, this evidence was irrelevant in view of our holding that the insurer was under no further duty to investigate at the time of the issuance of the policies.

Judgment is affirmed without costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.