166 N.J. Super. 8 (1979)
398 A.2d 1301
CLAIRE FORMOSA, PLAINTIFF-RESPONDENT,
v.
THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1978.
Decided January 31, 1979.
*10 Before Judges LORA, MICHELS and LARNER.
Mr. Charles W. Hutchinson argued the cause for appellant (Messrs. Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys; Mr. Hutchinson on the brief).
Mr. Paul A. Dykstra argued the cause for respondent (Messrs. Breslin & Breslin, attorneys; Mr. Dykstra on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant The Equitable Life Assurance Society of the United States (Equitable) appeals from a judgment of the Law Division awarding plaintiff Claire Formosa $72,187 under a life insurance policy issued on the life of her husband Daniel J. Formosa (Dr. Formosa), and dismissing its counterclaim for rescission of the policy.
On April 17, 1973 Equitable issued a life insurance policy to Dr. Formosa on the basis of his signed application. The application, which was attached to and formed part of the policy, consisted of two parts. Part 1 of the application was signed by Dr. Formosa on April 2, 1973 and contained the following pertinent statement above his signature:
Agreement
It is hereby agreed by the undersigned that:
1. The statements and answers in all parts of this application are represented by the undersigned to be true and complete and are made to induce the Equitable to enter into this Agreement and to issue any policy or contract which may be issued upon this application.
Part 2 of the application was signed by Dr. Formosa on February 8, 1973, prior to his signing Part 1, and also contained a clause above his signature, reading:
I represent that the above statements and answers are true and complete. I agree that such statements and answers shall be part of the application for insurance or request for policy change *11 or reinstatement, as the case may be, and are made to induce the Equitable to issue any policy which may be issued upon the application or to make the policy change or reinstatement.
Part 2 also contained questions and answers concerning Dr. Formosa's health and medical history, of which the following are pertinent to the resolution of this appeal:
6. a. Print name and address of your personal physician: (If none, so state). [Ans.] V. D'Agati, Teaneck, N.J.
b. Date and reason last consulted: [Ans.] 1972 Routine check-up.
c. What treatment was given or recommended? [Blank].
 7. Have you ever been treated for or ever
 had any known indication of: (Circle the
 applicable item). YES NO
 * * * * * * * *
 g. Diabetes; thyroid or other endocrine
 disease or disorder? X
 * * * * * * * *
 8. Are you now under observation or taking
 treatment? X
 * * * * * * * *
 10. Other than as stated in answers to
 questions 6-9, have you within the past
 5 years:
 a. Consulted or been examined or treated
 by any physician or practioner? X
 b. Had any illness, injury or surgery? X
 * * * * * * * *
 d. Had electrocardiogram, X-ray or other
 diagnostic test? X
* * * * * * * *
DETAILS
For each yes answer to the questions on this page, enter the question number and full details below. Include diagnosis, treatment and result, dates, duration and names and addresses of all attending physicians and medical facilities:
10  10 a.  d  see 6b.
Actually, Dr. Formosa, who was an oral surgeon on the staff of Holy Name Hospital in Teaneck, New Jersey, was suffering from diabetes when he signed the application for life insurance on February 8, 1973, and had been suffering *12 from the disease for several years prior to that time. In fact, as the result of laboratory tests, Dr. Formosa knew sometime in the mid-to late 1960s that he had diabetes. He prescribed Diabinese[1] for himself, taking this medication for several years until he entered Holy Name Hospital on October 6, 1974 with an illness which, on October 18, 1974, proved fatal.
Plaintiff, who is the named beneficiary in the policy, made claim for payment of the death benefit provided thereunder. Equitable refused to pay the claim, notified plaintiff that it was rescinding the policy, and tendered to her the premiums paid, together with interest. Thereafter, plaintiff instituted this action to recover the face amount of the policy  $72,187. Equitable filed an answer denying liability and a counterclaim seeking dismissal of the complaint and rescission of the policy on the ground of equitable fraud. It claimed that Dr. Formosa's answers to Questions 7(g), 8 and 10(b) and (d) of Part 2 of the application were either false or incomplete in that Dr. Formosa had a history of diabetes for a period of approximately nine years prior to February 8, 1973, and that he had been treating himself during that time with Diabinese. Equitable further claimed that Dr. Formosa's false and incomplete statements materially affected its acceptance of the risk and the hazard assumed thereby.
The counterclaim for rescission based on equitable fraud was tried by the judge without a jury. At the conclusion of the evidence he found that Dr. Formosa had diabetes when he entered Holy Name Hospital in October 1974, had known indications of the disease as of September 24, 1974 from the hospital's out-patient blood test, and that he must have had diabetes for some period before. However, the judge refused to rescind the policy, holding Equitable had *13 failed to prove that as of February-April 1973 Dr. Formosa had any known indication of diabetes and, even assuming that he did, his false answer to Question 7(g) was immaterial since his diabetic condition did not either render him uninsurable or cause his death. We disagree and reverse.
It is firmly embedded in the jurisprudence of this State that life insurance policies may be rescinded based upon equitable fraud, as well as legal fraud, even after the death of the insured. Equitable Life Assur. Soc. v. New Horizons, Inc., 28 N.J. 307, 312-313 (1958); Gallagher v. New England Mut. Life Ins. Co. of Boston, 19 N.J. 14, 20 (1955); Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1, 3 (E. & A. 1941); Metropolitan Life Ins. Co. v. Lodzinski, 124 N.J. Eq. 357, 359 (E. & A. 1938); Russ v. Metropolitan Life Ins. Co., 112 N.J. Super. 265, 274 (Law Div. 1970). See also Redler v. New York Life Ins. Co., 437 F.2d 41 (3 Cir.1971); Parker Precision Products Co. v. Metropolitan Life Ins. Co., 407 F. 2d 1070, 1073 (3 Cir.1969); Garman v. Metropolitan Life Ins. Co., 175 F.2d 24, 26 (3 Cir.1949); Ettelson v. Metropolitan Life Ins. Co., 164 F.2d 660, 663, 664-665 (3 Cir.1947). However, an action for rescission based on equitable fraud must be commenced prior to the incontestability clause in the policy taking effect, as mandated by N.J.S.A. 17B:25-4 (L. 1971, c. 144, § 17B:25-4), which provides:
There shall be a provision that the policy (exclusive of provisions of the policy or any contract supplemental thereto relating to disability benefits or to additional benefits in event of death by accident or accidental means or in event of dismemberment or loss of sight) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue.
Here, the incontestability clause did not operate to bar Equitable's counterclaim for rescission based on equitable fraud because the policy had not "been in force during the lifetime of the Insured for two years from the Date of Issue." *14 Dr. Formosa died before the two-year period expired, and therefore the policy remained contestable. Downs v. Prudential Ins. Co. of America, 130 N.J. Super. 558, 564-568 (Law Div. 1974); Taylor v. American Heritage Life Ins. Co., 448 F.2d 1375, 1376-1377 (4 Cir.1971). See also, 18 Couch on Insurance 2d, § 72.48 (1968).
The doctrine of equitable fraud and the long line of cases supporting it were not overruled by the Supreme Court's holding in Johnson v. Metropolitan Life Ins. Co., 53 N.J. 423, 440-443 (1969). Johnson dealt with a health and accident policy which the issuing insurer sought to rescind on the ground of equitable fraud after the expiration of the three-year contestable period provided in N.J.S.A. 17:38-13. 2(A). As Judge John Ackerman correctly observed in Russ v. Metropolitan Life Ins. Co., supra, analyzing the holding in the Johnson case:
The net result was that the Supreme Court held in Johnson that the proper construction of the mandatory contestable provision for inclusion in health and accident policies is that for the contestable period of three years (one year longer than the contestable period for life insurance policies), such policy may be voided for legal fraud or equitable fraud, but that after the expiration of the three-year period, such policy may be voided only for legal fraud. The court stated:
Thus the statute, as we interpret it, boils down to the proposition that after two years the policy may not be voided for a misstatement in the application unless the misstatement is `fraudulent' as we have defined the word, * * *.
* * * * * * * *
* * * As we have said, the insurer has really lost little or none of what in justice it ought to have when it is permitted to void the policy at any time at all upon proof of fraudulent misstatements.
* * * * * * * *
Here the pleading challenging the validity of the contract was filed well beyond the time limit. The insurer could not rely upon equitable fraud. Under this statute, it remained free to assert the misstatements were made with an intent to deceive. As we have said, it did not defend on that basis. [53 N.J. at 441-443; emphasis supplied]

*15 It is therefore apparent that, despite the remarks referred to above, the Supreme Court in Johnson nevertheless construed the statute before it as authorizing and sanctioning rescission of health and accident policies for equitable fraud during the three-year initial contestable period. Far from `overruling' the doctrine of equitable fraud or forbidding its application in rescission cases after loss has occurred, it did just the opposite. In the circumstances, the decision obviously cannot be deemed to have overruled the long line of cases holding that equitable fraud may be asserted during the two-year contestability period to void a life insurance policy even though the insured has died. [112 N.J. Super. at 278-279; emphasis in the original]
While an insurance policy may be declared invalid and ordered rescinded on the ground of equitable fraud, i.e., for a misrepresentation of a material fact even though innocently made, Equitable Life Assur. Soc. v. New Horizons, Inc., supra; Gallagher v. New England Mut. Life Ins. Co. of Boston, supra; Metropolitan Life Ins. Co. v. Tarnowski, supra; Metropolitan Life Ins. Co. v. Lodzinski, supra; Colonial Life Ins. Co. of America v. Mazur, 25 N.J. Super. 254, 260 (Ch. Div. 1953); Metropolitan Life Ins. Co. v. Chambers, 142 N.J. Eq. 440, 443 (Ch. Div. 1948), the application of this rule is not as encompassing as stating it might suggest. See Ettelson v. Metropolitan Life Ins. Co., supra; Colonial Life Ins. Co. of America v. Mazur, supra. The rule is applied rather strictly to objective questions in an application for insurance, the answers to which must be within the applicant's knowledge, such as whether the applicant has been examined or treated by a physician. However, the rule does not apply to the same extent in dealing with subjective questions, such as what is the state of the applicant's health or whether the applicant has or has had a specified disease or illness. With respect to subjective questions, our courts have held that such questions seek to probe the applicant's state of mind, and if a negative answer is a correct statement of the knowledge and belief it is not a misrepresentation, and thus does not constitute equitable fraud. See Johnson v. Metropolitan Life Ins. Company, *16 supra, 53 N.J. at 434; Shapiro v. Metropolitan Life Ins. Co., 114 N.J. Eq. 378, 381 (E. & A. 1933); Russ v. Metropolitan Life Ins. Co., supra, 112 N.J. Super. at 270-271; Colonial Life Ins. Co. of America v. Mazur, supra. See also, Ettelson v. Metropolitan Life Ins. Co., supra.
With these principles in mind, we turn to an examination of Question 7(g) and the answer thereto  which, incidentally, was the only question and answer in Dr. Formosa's application that the trial court considered in reaching its decision. Question 7(g) is a subjective question. Hence, in order to prevail on its counterclaim, Equitable had to prove not only that Dr. Formosa actually had diabetes on February 8, 1973, but also that he knew and believed on that date when he answered the question in the negative that he had had a known indication of the disease. See Johnson v. Metropolitan Life Ins. Company, supra, 53 N.J. at 434; Russ v. Metropolitan Life Ins. Co., supra.
The uncontroverted proofs show that Dr. Formosa knew he was suffering from diabetes for years before he applied to Equitable for life insurance. On numerous occasions over an eight to ten-year period prior to his death on October 18, 1974, he discussed with Dr. D'Agati, a colleague on the staff at Holy Name Hospital, the fact that he had diabetes and that he was taking medication for the disease. Dr. Formosa specifically told Dr. D'Agati that he "had had sugars done and his urine showed a blood sugar," and that "he treated himself" with Diabinese. Dr. D'Agati knew that Dr. Formosa started to take Diabinese some years before his fatal illness in October 1974, although unaware of the exact date. Dr. D'Agati explained that occasionally over the years Dr. Formosa "would tell [him] that he had had an examination, had his blood sugar checked, what diets he was on, that sort of thing." Dr. Formosa told Dr. D'Agati that "his control was very good," and that his "urines were negative, blood sugar normal with diet." As supported by the following excerpt from Dr. D'Agati's testimony, Dr. Formosa himself diagnosed his condition:

*17 He diagnosed his case of diabetes because he told me that his blood sugar was elevated  sugar in his urine  mild diabetic condition.
When Dr. Formosa was admitted by Dr. D'Agati to Holy Name Hospital on October 6, 1974 with a fever of unknown origin, he once again told Dr. D'Agati that he had diabetes. Dr. D'Agati's testimony in this respect was corroborated by the history contained in the hospital record:
"Diabetes, taking diabinese twice a day and is on a diet. Lost 30 pounds, 30 to 40 pounds by diet."
The failure of Dr. Formosa in giving Dr. D'Agati his medical history to tell him when he first learned that he had the disease, or to give Dr. D'Agati any indication as to its duration, does not provide a sound basis from which to conclude that Dr. Formosa did not know as of February 1973 that he had diabetes. Dr. D'Agati amplified the history given him in the hospital by pointing out that Dr. Formosa had only sporadically followed a diet and that Dr. Formosa had discussed his diabetic condition and his self-prescribed treatment with him over a period of about eight to ten years before he died. Additionally, Dr. Rigolosi, a nephrologist whom Dr. D'Agati called in consultation, also testified that Dr. Formosa told him that he had had diabetes for the past ten years which was controlled by Diabinese, testimony which is corroborated completely by the entry Dr. Rigolosi made in his consultation report of October 15, 1974:
"Past History of Diabetes times 10 years controlled by Diabinese once a day."
Dr. Formosa also saw Dr. Kovin, a cancer specialist called by Dr. D'Agati, who treated him for Hodgkins Disease. Dr. Kovin's consultation report of October 12, 1974 shows that "[p]atient is a known diabetic, taking Diabinese."
Plaintiff admitted that Dr. Formosa told her about eight years prior to the trial in this matter (which was held in *18 April 1973), "[h]e thought he had Diabetes," and was taking Diabinese tablets for the disease prior to February 1973. She testified that she watched his diet when he first mentioned the diabetes and prepared food for him according to the diet sheets that he had given her. However, she testified that he "never really stuck to the diet," and that eventually she told him she was not going to prepare meals in accordance with the diet; in fact, she stated she had not followed the diet for the past five years. That Dr. Formosa actually knew and believed in February 1973 that he had diabetes is abundantly clear from the following testimony elicited from plaintiff by the trial judge:
THE COURT: Did he ever tell you the results of any blood tests that he had concerning any sugar condition?
THE WITNESS: Yes, when he came home sometimes he would say my blood sugar is high.
THE COURT: When was that?
THE WITNESS: I really don't know. It was probably after he read the lab reports that he had taken at the hospital.
THE COURT: Can you tell me when the first time was?
THE WITNESS: No, I can't, I really can't.
THE COURT: Well, in reference to any  are we talking about that eight years ago?
THE WITNESS: Yes.
THE COURT: You're talking about 
THE WITNESS: Yes.
THE COURT: All right, so we're talking about when he first thought he had 
THE WITNESS: Yes.
Thus, the proofs stand in stark contrast to the trial judge's holding that Equitable failed to prove that as of February  April 1973 Dr. Formosa had any known indication of diabetes. The judge's attempt to discredit Dr. D'Agati's testimony by characterizing it as vague and uncertain was completely unjustified. His refusal to give credence to Dr. Rigolosi's testimony, corroborated by the doctor's consultation report, that Dr. Formosa told him that he had had diabetes for ten years and had controlled it with Diabinese, ostensibly because Dr. Formosa "was rapidly deteriorating *19 in his terminal illness" and could not have given "a precise, coherent and knowing answer" to the question, was equally unwarranted. Finally, the judge's refusal to accept the clear import of plaintiff's testimony because it did not indicate that Dr. Formosa had a "definite medical opinion as opposed to premonition, suspicion or concern," was simply erroneous and unsupported by the evidence in the case. The proofs showed that prior to signing the insurance application Dr. Formosa knew and believed that he had diabetes and that his knowledge and belief were not based on mere premonition, suspicion or concern, but rather on the results of the laboratory tests which proved he had the disease.
It is beyond dispute that Dr. Formosa's "No" answer to Question 7(g), "Have you ever had any known indication of * * * Diabetes?," was not a correct statement of his knowledge and belief at the time he signed the application, and therefore constituted equitable, if not legal, fraud. Furthermore, it is perfectly obvious that Dr. Formosa's negative answers to Questions 8 and 10 (b) were incorrect statements of his knowledge and belief at the time he gave them. Hence, notwithstanding the failure of the trial judge to rule on these questions in the first instance, in the interests of justice we have decided to exercise such original jurisdiction as is necessary to complete determination of this matter. N.J. Const. (1947), Art. VI, § V, par. 3; R. 2:10-5. See also, State in Interest of S.H., 61 N.J. 108, 116 (1972); State v. South, 136 N.J. Super. 402, 408 (App. Div. 1975), certif. den. 69 N.J. 387 (1976). In exercising this jurisdiction we find that Dr. Formosa proscribed for himself and had been taking Diabinese for several years prior to February 1973 when he answered "No" to Question 8: "Are you now * * * taking treatment?" Similarly, Dr. Formosa knew and believed he was suffering from the disease when he answered "No" to Question 10(b): "Have you within the past 5 years * * * had any illness?" These incorrect answers compel the conclusion that Dr. Formosa was guilty of equitable fraud in connection with his application for life insurance. *20 In the circumstances there is no need to consider whether his answer to Question 10(d) constituted a complete disclosure of the medical information requested thereby.
We are thoroughly convinced that Equitable established by clear and convincing evidence that Dr. Formosa had diabetes, and that he knew and believed he had the disease when he signed the application for insurance in February 1973. Therefore, his incorrect answers to the questions constituted equitable fraud, and warranted rescission of the policy issued to him. The court's conclusion to the contrary was clearly mistaken and so plainly unwarranted that the interests of justice demand intervention and correction. We hold to a "definite conviction that the judge went so wide of the mark, a mistake must have been made." State v. Johnson, 42 N.J. 146, 162 (1964).
"[W]e are convinced that [the factual findings and legal conclusions of the court] are so manifestly unsupported by [and] inconsistent with the competent, relevant and reasonably credible evidence [that they] offend the interests of justice[.]" Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963) * * *. [Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974)]
Furthermore, we are convinced that the judge erred in holding, as an alternative reason for denying rescission, that even if Dr. Formosa knew he had diabetes prior to the issuance of the policy, his false answer to Question 7 (g) was immaterial because diabetes neither rendered him uninsurable nor caused his death. Dr. Formosa's false answer to Question 7(g), as well as his false answers to Questions 8 and 10(b), met the criteria of materiality established by our Legislature in enacting the Life and Health Insurance Code, N.J.S.A. 17B:17-1, et seq. (L. 1971, c. 144, § 17B:17-1 et seq.). N.J.S.A. 17B:24-3(d), which was in effect at the time Dr. Formosa applied for and was issued the policy, provides:
The falsity of any statement in the application for any policy or contract covered by this section may not bar the right to recovery *21 thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.
Dr. Pollock, Equitable's Medical Director, testified that had Dr. Formosa disclosed he had a ten-year history of diabetes, and had been controlling the disease with Diabinese, Equitable would have required additional information, consisting of a supplementary diabetic questionnaire going into his diabetic history, a two-hour postprandial blood sugar test, a statement from his treating physician and, because of his age and the amount of insurance requested, an electrocardiogram. Dr. Pollock further testified that without this additional information Equitable would not have issued a policy to Dr. Formosa. While Dr. Pollock conceded that diabetes does not necessarily render a person uninsurable, and that, in certain circumstances, policies are issued to persons suffering from the disease, in which case a higher premium is charged, he stated emphatically that Equitable would have declined coverage for Dr. Formosa "because he was a diabetic, not under adequate supervision." Thus, it cannot seriously be disputed that Dr. Formosa's false statements concerning his prior medical history "materially affected the acceptance of the risk." In this regard the following statement in Kerpchak v. John Hancock Mut. Life Ins. Co., 97 N.J.L. 196 (E. & A. 1922), is most appropriate and worthy of being repeated:
Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium. [at 198]
See also, Gallagher v. New England Mut. Life Ins. Co. of Boston, supra, 19 N.J. at 20-21; Urback v. Metropolitan Life Ins. Co., 127 N.J.L. 585, 586 (E. & A. 1942); Parker Precision Products Co. v. Metropolitan Life Ins. Co., supra; 7 Couch on Insurance 2d, § 37:252 (1961): 12 Appleman, Insurance Law and Practice § 7294 at 401-407 (1943).
*22 Finally, we emphatically reject the court's suggestion that there must be a causal relationship between an applicant's false statements and the cause of his death before an insurer may rescind a life policy on the ground of equitable fraud. This is not the law in a majority of jurisdictions in this country, see 1 Appleman, Insurance Law and Practice § 215 at 331 (1965); 7 Couch on Insurance 2d, supra, § 35:87 at 102, and we hold that it is not the law of this State. See Metropolitan Life Ins. Co. v. Alvarez, 133 N.J. Eq. 65, 66-67 (Ch. 1943); Metropolitan Life Ins. Co. v. Coddington, 131 N.J. Eq. 430, 436-437 (Ch. 1942). Cf. Dimick v. Metropolitan Life Ins. Co., 69 N.J.L. 384, 396 (E. & A. 1903).
Accordingly, the judgment awarding plaintiff damages in the sum of $72,187 under the policy issued on the life of her husband is reversed, and judgment is entered herewith in favor of Equitable on its counterclaim, rescinding the policy on the ground of equitable fraud. No costs are awarded.
NOTES
[1] Diabinese is an oral hypoglycemic agent, discovered and synthesized by Chas. Pfizer & Co., Inc., which is "valuable in the treatment of selected diabetic patients." Physicians' Desk Reference B35 (Supp. B, 1977).