635 A.2d 598

ESTATE OF JUAN RIVERA AND CECILIA RIVERA, PLAINTIFFS,
v. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH
INS., CHARLES KIMBER, TRIBUS AGENCY, DEFENDANTS.

Superior Court of New Jersey
Law Division, Union County

Decided August 26, 1993.

*Robert M. Schechter* for plaintiffs (*Smith and Schechter,* attorneys).

*Anthony Palmisano, Jr.* for defendant North American Company for Life and Health Ins. (*McCarter and English,* attorneys).

*Marc H. Leen* for defendants Kimber and Tribus Agency (*Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg,* attorneys).

ALLEY, J.S.C.

A. *Introduction:*

This opinion deals with the effect, if any, that the inability of an applicant for insurance to communicate in English should have when the court is considering whether the insurer has a right (under *Massachusetts Mutual Life Insurance Co. v. Manzo,* 122 *N.J.* 104, 111, 584 *A.*2d 190 (1991)), to rescind a policy of insurance within the contestability period. This question arises in the context of a motion by defendant North American Company for Life and Health Insurance ("insurer") for summary judgment dismissing plaintiffs' complaint and allowing it to rescind a life insurance policy that it issued to the decedent, Juan Rivera. Defendants Charles Kimber and the Tribus Agency join this motion, which plaintiffs oppose.

B. *Facts:*

Plaintiffs seek to recover insurance proceeds under the subject policy, which the insurer issued on the life of Mrs. Rivera's late husband, Juan P. Rivera, in March 1988. Plaintiffs have joined as defendants the insurer and Charles Kimber, the insurance producer who sold the policy. By way of counterclaim, the insurer seeks rescission of the policy due to alleged material misrepresentations by the insured in his application for insurance.

The policy was issued as part of an enhancement of Juan Rivera's benefits package that was being undertaken by his employer, Dynamic Metals. The present record would support a finding that Rivera was not responsible for paying the policy's premiums and that this expense would be paid by Dynamic Metals.

There were specific questions on the application dealing with pre-existing medical conditions. The answers stated that Rivera had not been treated by a physician in the last five years nor had he ever been treated for high blood pressure. In fact, Rivera had been treated by a physician for high blood pressure during that period. The insurer asserts that these incorrect answers consti-

tuted knowing misstatements by Rivera, the applicant, that were material to the risk insured and relied upon by the insurer in its issuance of the policy. Rivera died of cancer in December 1988.

Plaintiffs have set forth facts from which the trier of fact could find that the issuing agent came to Rivera's place of employment, questioned each worker, and completed each worker's application himself. There is deposition testimony to the effect that Kimber, the issuing agent, read the application to Rivera and filled it out for Rivera, and that Rivera simply signed the application where Kimber indicated. Plaintiffs have set forth facts tending to show that Rivera's understanding of the English language was extremely limited, that he read and spoke Spanish almost exclusively, and that he never had any formal training in English and had only an eighth grade education, which he completed in Puerto Rico. These allegations in turn raise issues of fact concerning Rivera's ability to understand the insurance application and to knowingly misrepresent the fact he had been treated for hypertension, and the question for the court on this motion is whether those facts are material.

## C. *Discussion:*

The insurer seeks to rescind Rivera's policy on the basis of equitable fraud. The New Jersey Supreme Court has affirmed the well-established law of this State that equitable fraud will support rescission of an insurance policy:

> In sum, we hold that equitable fraud should be available as a grounds for post-loss rescission and that within the period of contestability an insurer may rescind a policy if the insured knowingly misrepresented facts that would have affected the estimate of the risk and the premium charged.
>
> [*Massachusetts Mutual Life Ins. Co. v. Manzo,* 122 *N.J.* 104, 111, 584 *A.*2d 190 (1991).]

Except for the issue of the applicant's inability to communicate in English, the *Manzo* decision has expressly addressed the material issues of law raised on this motion. For example, in *Manzo,* the applicant denied having been advised of, treated for or having had any known indication of diabetes. *Id.* at 109, 584 *A.*2d

190. This was false. He denied consulting a physician other than for a routine check-up in the five years prior to the application. *Id.* This was also false. The evidence at trial was that if the company had known the truth it would have issued a rated policy with moderate to high premiums instead of a policy at standard rates. *Id.* Knowledge of Manzo's diabetes would have affected the underwriter's judgment in approving the application, estimating the risk, and fixing the premium. *Id.*

The Supreme Court stated:

> The principle that equitable fraud, like legal fraud, is available to rescind a life insurance policy even after the death of the insured is, however, "firmly embedded in the jurisprudence of this State." *Formosa v. Equitable Life Assurance Soc'y,* 166 *N.J.Super.* 8, 13 [398 *A.*2d 1301] (App.Div.), *certif. denied,* 81 *N.J.* 53 [404 *A.*2d 1153] (1979) (citations omitted).

> [*Id.* at 111, 584 *A.*2d 190.]

Here, as well, the application in material respects was not factual, and the insurer would not have issued the same policy for the same premium if it had known the facts.

The insured in *Manzo* did not die of the condition which he misrepresented. He was shot to death. His representatives asserted that the policy could not be rescinded because of the lack of a causal link between the misrepresentation and the loss. The Supreme Court rejected this assertion, stating:

> By requiring a causal connection between the disability misrepresented and the insured's death, the decision below conflicts not only with *Formosa,* but also with the general rule that "in the absence of a statute establishing a different rule, there need be no causal connection between the cause of death and the misrepresentation." Couch, *supra* § 37:110 at 632. This rule is accepted by a majority of jurisdictions. Couch, *supra,* §§ 37:38 at 102 and 37:110 at 632; Appleman, *supra,* § 245 at 125; R. Keaton and A. Widiss, *Insurance Law, A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices* 572 n. 20 (West 1988) (the "clear majority rule" is that no causal connection is required); *see, e.g., Shafer v. John Hancock Mut. Life Ins. Co.,* 410 *Pa.* 394, 399, 189 *A.*2d 234, 237 (1963) ("It is of no consequence that the death ensued from a cause unconnected with the false representations."). We are persuaded that the majority rule is the correct one. An insurer is entitled to relief when it relies on incorrect information provided by an insured in an insurance application if the information was material either to the insurer's decision to insure or to the terms of the contract. As the Legislature perceived in *N.J.S.A.* 17B:24–3(d), the law should encourage insureds to tell the

truth, not to conceal information from the insurer and gamble that they will not die of a concealed disease.

[122 *N.J.* at 118, 584 *A.*2d 190.]

Here, as in *Manzo,* the insured died of a condition other than the one that allegedly was misrepresented, but that is not legally relevant.

The insurer premises its summary judgment motion on the contention that Rivera's alleged misrepresentations concerning his pre-existing hypertension and treatment were material and that consequently, as a matter of law, it can rescind Rivera's policy. Plaintiffs, however, assert that an issue of fact exists concerning the state of Rivera's alleged knowledge of the falsity of the representation, arising from his inability to understand the English language. Kimber, the issuing agent, testified at his deposition to the effect that he read the application to Rivera, completed the application based on Rivera's responses, and then gave it to Rivera to review and sign after indicating the correct place for his signature with a circled "X." Mrs. Rivera stated in her certification that her husband could understand very few written or spoken English words, and that he spoke and read Spanish almost entirely. Although Kimber did not specifically recall his interview with Rivera, he sensed that some individuals he had interviewed at Dynamic Processing had a primary language other than English, and perhaps four did not speak fluent English. Spanish was never spoken during the interview process, since everything was done in English.

The Supreme Court has recently quoted with approval the following basic principle in *Rudbart v. North Jersey District Water Supply Comm.,* 127 *N.J.* 344, 353, 605 *A.*2d 681 (1992): "A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect."

In the absence of fraud, even illiterate persons have been held bound by a signed contract. *See, e.g., Modern Security v. Lockett,* 143 *A.* 511 (N.J.1928).

The insurer relies on principles such as these in urging that rescission should be granted as a matter of law. Principles of contract law that prevent one who is ignorant of its terms from escaping the effect of his or her agreement are not dispositive, however. In the typical contract case, the allegedly ignorant party is seeking to avoid his or her own agreement. It is not surprising that legal doctrine precludes such a contention as a matter of contract law. It is, in most circumstances, legally irrelevant if one who seeks to avoid an agreement did not read or understand it before signing it.

In this case, however, the issue is radically different, because ignorance is legally relevant. Here, the contract's validity is not being attacked by one who the law forbids to say that he or she was ignorant of the agreement's contents. To the contrary, here the insurer asserts a fraud claim. The invalidity of the contract is being asserted, not by the ignorant party, but by one who has the burden of proving that the insured *"knowingly* misrepresented facts"* in the application. *Manzo, supra,* 122 *N.J.* at 111, 584 *A.*2d 190. (emphasis added). *See also Ciampoli v. Prudential Ins. Co. of America,* 5 *N.J.Super.* 302, 68 *A.*2d 883 (App.Div.1949).

Because it has the burden of showing that an applicant had such knowledge, an insurer's proofs necessarily will deal with the subjective state of the applicant's thinking. Accordingly, the issue of an applicant's fluency is relevant as bearing on whether an insurer can prove that misstatements should be deemed to have been made knowingly, *see Ciampoli, supra.* This issue goes to the heart of the state of the knowledge which the applicant allegedly misrepresented—knowledge which the Supreme Court has stated in *Manzo* is requisite.

This decision does not set forth a general rule favoring the avoidance of agreements on the basis of an inability to understand English. It simply applies the rule in *Manzo* that, in this type of equitable fraud case, the applicant's knowledge of the falsity is a vital element of the insurer's cause of action. As a practical matter, this should not impose an unwarranted or unforeseen

burden on insurance companies. It should be beyond legitimate dispute that it is well within the power of an insurer or its representative to be aware, at the time an application is made, whether an applicant understands English. Presumably, if the opportunity to do so is not overwhelmed by the rush to sell a policy, they could readily make appropriate interpreting arrangements, or afford the applicant that opportunity. The applicant could then be aware of the meaning of the answers he or she gives on the application, without the difficulties interposed by a language barrier.

■ This is a motion for summary judgment under *R.* 4:46, and to defeat it the plaintiffs need show only that the evidence, construed in a light most favorable to them, raises a genuine issue of material fact. The court is satisfied that plaintiffs have met that burden, and based on Rivera's alleged inability to understand English the insurer's motion must be denied.